

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| JOHN DEAN WENNIHAN, | ) | |
| | ) | |
| Respondent, | ) | WD77280 |
| | ) | |
| v. | ) | OPINION FILED: January 13, 2015 |
| | ) | |
| BETH ANN WENNIHAN, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Atchison County, Missouri**
The Honorable Corey Keith Herron, Judge

Before Division Two: Cynthia L. Martin, Presiding Judge, Victor C. Howard, Judge and
Mark D. Pfeiffer, Judge

Beth Wennihan ("Mother") appeals from a judgment entered in the Circuit Court of Atchison County dissolving her marriage to John Wennihan ("Father"). Mother challenges the trial court's designation of Father's home as the child's residence for school and mailing purposes and its division of parenting time in its parenting plan. For the following reasons, the trial court's judgment is reversed in part, and the cause is remanded to the trial court with instructions to amend its parenting plan to address

various school holidays that were overlooked therein. In all other respects, the judgment is affirmed.

**Factual and Procedural History**

Father and Mother were married on November 20, 2002. One child, Carter, was born of the marriage on June 3, 2008.

On October 22, 2012, the couple separated, and Father filed his petition for dissolution of the marriage the following day. At the time of separation, the family had been living in a home that Father had inherited from his grandfather. Mother went to stay with relatives.

On November 2, 2012, the trial court entered its Pendente Lite Order, generally providing that the child would continue to reside with Father in the family home and that Mother would have parenting time on Tuesday and Thursday evenings and overnight on alternating weekends. Provisions were also included for summer and holidays.

The case was tried on April 1 and 2, 2013. Both parties requested that the trial court enter an award of joint legal and physical custody. The parties submitted competing parenting plans with each party seeking to have their home designated as the child's address for school and mailing purposes and to have the larger portion of the parenting time. On April 11, 2013, the trial court entered its Judgment of Dissolution dividing the couple's personal and marital property, designating Father's home as the child's address for purposes of school and mailing, and adopting its own parenting plan.

Mother filed a post-trial Motion to Amend and/or Correct the Findings and Judgment of the trial court. In response, the trial court entered an Amended Judgment of

2

Dissolution on May 24, 2013, making findings as to acts of domestic violence as required by section 452.375.13 but in all other respects leaving the judgment unchanged.

On June 24, 2013, Mother, by and through newly retained counsel, filed a Motion for New Trial, largely attempting to reargue the evidence and seeking an opportunity to present additional evidence related to child custody that had not been presented at trial or had arisen since trial. Mother also claimed that there was marital and non-marital property that had not been divided by the trial court. Following a case management conference, on June 28, 2013, the trial court set aside its Amended Judgment to allow the parties an opportunity to resolve whether there were marital and/or non-marital assets and debts that had not been addressed in the judgment.

On December 9, 2013, the trial court entered its Second Amended Judgment of Dissolution. The provisions related to the child's designated address, custody, and parenting time remained the same as in the first two judgments. Mother was given parenting time on alternating weekends from 4 p.m. Friday until 7 p.m. Sunday. On those weekends where she was not granted the full weekend, Mother was to have the child from 4 p.m. Friday until 10 a.m. Saturday. In addition, Mother was to have the child Wednesday evenings from 4 p.m. until 7 p.m.[1] The trial court expressly found that it was in the child's best interest not to have midweek overnight stays with Mother during the school year because Mother's work schedule and the location of the child's school in relation to Mother's home and workplace would require the child to wake very early in

---

[1] During those summer periods where Father has custody, Mother's Wednesday custody was to be overnight and the two extra Friday overnights were suspended.

3

the morning. Over the summer, Mother was to have the child for eight weeks with Father having parenting time on alternating weekends and from 4 p.m. Wednesdays until 10 a.m. on Thursdays. The trial court also set forth an alternating schedule evenly dividing certain holidays, Spring break, and Christmas break.[2] Mother brings three points on appeal.[3]

## Standard of Review

"Our standard of review in a dissolution action is governed, as in any court-tried case, by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo. App. W.D. 2013). "We will affirm the decree of dissolution unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Pollard v. Pollard*, 401 S.W.3d 506, 510 (Mo. App. W.D. 2013) (internal quotation omitted).

"Judging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witness." *Sharrai v. Sharrai*, 322 S.W.3d 641, 643 (Mo. App. W.D. 2010) (internal

---

[2] Despite claiming that the trial court erred in setting forth its schedule for parenting time, in her brief on appeal, Mother never sets out the terms of the parenting plan or states how much total time was actually awarded to her. An appellant challenging the propriety of the parenting time schedule adopted by the trial court should set forth a reasonable summary of the entire schedule somewhere in their brief. This court can only assess the reasonableness of claims like, "Appellant was not awarded enough overnight visitation," within the context of the parenting time schedule as a whole.

[3] At the beginning of her appellate brief, Mother briefly stated that she would be filing a separate motion generally alleging that there were certain, unidentified marital and non-marital assets and debts that her attorney had discovered that the trial court had failed to value or set aside to the parties in its judgment. She claimed that the allegations she would be making could potentially call into question the finality of the trial court's judgment. No issue related to the division of assets was otherwise raised in her appellate brief, and Mother never filed such a separate motion. As such, no issue relating to property valuation or distribution is presently before this court, and this Court has no basis upon which to question the finality of the judgment.

4

quotation omitted). "We presume that the trial court took into account all evidence and believed such testimony and evidence that is consistent with its judgment." *Id.* (internal quotation omitted). "We do not reevaluate the testimony; instead, we are confined to determining whether substantial evidence exists to support the trial court's judgment." *Sparks v. Sparks*, 417 S.W.3d 269, 280 (Mo. App. W.D. 2013 (internal quotation omitted). "We will set aside a judgment as against the weight of the evidence only if we have a firm belief that it is wrong." *Id.* In conducting our review, "[w]e view the evidence and all permissible inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences," *id.* (internal quotation omitted), and we "defer to the trial court even if the evidence could support a different conclusion." *Pollard*, 401 S.W.3d at 510 (internal quotation omitted).

## Multifarious Points Relied On

Before addressing Mother's claims on appeal, we are compelled to note that Mother's points relied on contain multifarious claims of error and, accordingly, violate Rule 84.04.[4] *Wiley v. Homfeld*, 307 S.W.3d 145, 152 (Mo. App. W.D. 2009) (overruled in part on unrelated grounds in *Badahman v. Catering St. Louis*, 395 S.W.3d 29, 36-37 (Mo. banc 2013)). "A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on." *Rouse v. Cuvelier*, 363 S.W.3d 406, 419 (Mo. App. W.D. 2012) (internal quotation omitted). "Despite this flagrant disregard of the rules, the policy of the appellate courts in

---

[4] "A statement of a point relied on . . . violates Rule 84.04 when it groups together contentions not related to a single issue. As such, it is multifarious." *McLean v. First Horizon Home Loan, Corp.*, 369 S.W.3d 794, 800 n.4 (Mo. App. W.D. 2012) (internal quotation omitted).

this State is to decide a case on the merits rather than technical deficiencies in the brief." *Wiley*, 307 S.W.3d at 152. "Because we are able to discern the claims being made and the defective nature of the point[s] relied on does not impede our disposition of the case on the merits, we will exercise our discretion to attempt to resolve the issues on the merits." *Id.* "We will separate [Appellant]'s contentions, as best we can discern them, and respond to each one individually." *Id.*

We further note that in the points relied on in her initial brief, Mother generally claims that the trial court's judgment is not supported by the evidence, is against the weight of the evidence, is against the child's best interests, and erroneously applies the law with regard to each of her assorted claims of error. However, in response to Father's challenge to the multifarious nature of Mother's points on appeal, in her reply brief, Mother specifies that the third and fourth sub-points to her third point on appeal, related to whether the trial court made sufficient findings regarding its rejection of the parties' proposed parenting plans and to whether the parenting plan complies with the statutory requirements of section 452.310(8), should be regarded as claims that the trial court misapplied the law. With regard to all of her other claims on appeal, Mother asks this Court to simply review whether the challenged determinations by the trial court are against the weight of the evidence. We address Mother's claims of error as so modified.

6

## Analysis

## Point I

As modified by her reply brief, Mother's first point asserts that the trial court's findings under section 452.375.2(3)[5] ("[t]he interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests"), section 452.375.2(5) ("[t]he child's adjustment to the child's home, school, and community"), and section 452.375.2(7) ("[t]he intention of either parent to relocate the principal residence of the child") are against the weight of the evidence because the trial court improperly (1) disregarded Father's actions in evicting Mother from the family home, (2) overweighed the value to the child of remaining in the marital home and the Tarkio School District, (3) treated the parenting provisions of its *Pendante Lite* Order as a prior custody adjudication, and (4) failed to reconsider its parenting time schedule in light of Mother's post-trial change of residence to a home within the Tarkio School District.

In her first sub-point, Mother argues that the trial court erred in affording insufficient weight to the events surrounding her departure from the family home in rendering its judgment. She claims that Father had no legal basis for serving her with a Notice to Vacate the family home on October 22, 2012. She contends that Father's actions in improperly forcing her to leave the home should have weighed strongly in her favor and that the trial court should not have afforded any weight to Father's continued

---

[5] Section 452.375.2 lists eight non-exclusive factors that are to be considered by the trial court in determining the best interests of a child related in making custody determinations. *Sutton v. McCollum*, 421 S.W.3d 477, 483 (Mo. App. S.D. 2013).

occupancy of the family home in rendering its decision related to parenting time and the child's designated address for school and mailing purposes.

In its judgment, the court awarded Father the family home, which he had inherited from his grandfather, as his separate, non-marital property. Mother makes no contention that the trial court improperly awarded Father the home and, in fact, agreed at trial that the house should be set aside to him. The trial court ultimately found that it was in the child's best interests for that home to remain the child's principal place of residence.

The trial court clearly considered and weighed evidence related to Mother's departure from the home. The trial court noted that whether Mother would have had a legal basis for remaining in the house for some or all of the period between October 22, 2012, and the date of trial was largely inconsequential to its assessment of what was currently in the best interests of the child. The trial court expressly stated that it would have fashioned the parenting plan the same way even if Mother had been physically residing in the marital home at the time of trial.

As noted *supra*, "[j]udging credibility and assigning weight to evidence and testimony are matters for the trial court, which is free to believe none, part, or all of the testimony of any witness." *Sharrai*, 322 S.W.3d at 643 (internal quotation omitted). Accordingly, the trial court was free to believe or disbelieve all, some, or none of the evidence presented by Mother related to her departure from the family home and to assess the weight to be given to any evidence found to be credible. "Regarding custody issues, we grant the trial court broad discretion and do not reweigh the evidence, even if the evidence may have supported another conclusion." *Thorp v. Thorp*, 390 S.W.3d 871,

877 (Mo. App. E.D. 2013). In short, we must defer to the trial court's weighing of this evidence and decline Mother's invitation to reweigh it. The evidence related to Mother's departure from the home does not render the trial court's findings against the weight of the evidence.

In her next subpoint, Mother argues that the trial court's findings are against the weight of the evidence because it improperly weighed the value to the child of remaining in the family home and the Tarkio School District. She notes that the child had only been living in that home for about six months when Mother moved out and had been living there approximately one year at the time of trial and asserts that any concern regarding uprooting him warranted only minimal consideration. Mother further argues that the trial court should not have placed any weight on the fact that the child had attended preschool in the Tarkio School District. She notes that the trial court found that there was no reason to believe that the child would not be successful in either the Tarkio School District or the West Nodaway School District. Mother contends that it was improper for the trial court to place more weight on the fact that the child would know some of the students in kindergarten if he remained in the Tarkio School District than on Mother's ability to help in the child's education.

Again, Mother asks us to reweigh the evidence. The trial court found that both Father and Mother's homes were appropriate for the child. It simply decided that, all other things being equal, it was in the child's best interests to remain in the same home and school district. It is not for this Court to reweigh that evidence. The length of time the child resided in the home prior to trial and that fact that the child had only been in the

9

Tarkio School District for one year do not render the trial court's findings against the weight of the evidence.

In her third sub-point, Mother contends that the trial court's findings were against the weight of the evidence because the court erroneously treated the parenting plan in its Pendante Lite Order as if it were a prior custody determination. She argues that the trial court improperly held Mother to a modification of custody standard, rather than making an initial, unbiased assessment in creating its new parenting plan.

Certainly, as noted by Mother, in a dissolution proceeding, custody determinations are to be "made based on consideration of the eight factors set out in Section 452.375, [and] not based on who happens to have actual custody of the child from the time of separation until the judge makes the custody determination." *Defreece v. Defreece*, 69 S.W.3d 109, 113 (Mo. App. W.D. 2002) (internal quotation omitted). The fundamental problem with Mother's argument is that the judgment simply does not reflect that the trial court placed any reliance on the fact that Father had a greater amount of parenting time with the child between the date of separation and trial. Contrary to Mother's assertions, the trial court's occasional reference to the fact that the child had continued to reside in the marital home pursuant to the provisions of its *Pendente Lite* Order does not indicate, let alone establish, that the trial court treated its *Pendente Lite* Order as a prior custody determination.

To the extent that Mother is contending that the trial court should not have considered whether it was in the child's best interests to continue living in the family

10

home or to remain in the Tarkio School District, Mother is simply mistaken. These were clearly appropriate considerations in assessing the best interests of the child.

In the final sub-point of her first point relied on, Mother claims that the trial court's findings were against the weight of the evidence because the trial court failed to adequately consider the fact that she had moved into a home in the Tarkio School District on July 17, 2013, three months after the case was tried and while her motion for new trial was pending. She contends that, having been informed by her of this move, the trial court should have altered its judgment.

The trial court expressly denied Mother's general request to reopen the evidence in this case, and Mother has not asserted any claim on appeal that the trial court erred in failing to reopen the evidence. Accordingly, there was no evidence of Mother's move before the court. Further, in its Second Amended Judgment, the trial court stated:

> The Court notes that since trial [Mother] alleges she has again re-located to a residence near [Father] and within the Tarkio school district. . . . Even if the Court considered Respondent's alleged re-location, presumably her employment remains the same and thus the same or similar after school timing and travel issues would remain unaffected.

The trial court's judgment reflects that the trial court was concerned with Mother's work schedule and the distance between the child's school and the school where Mother worked and how those factors would effect when the child had to be dropped off and picked up from school. The trial court determined that a move by Mother to the Tarkio School District would not alleviate either of those concerns.

In short, evidence proving that Mother had relocated was not a part of the trial record. Notwithstanding that fact, the trial court clearly held that even if such evidence

11

was properly before it for consideration, the evidence would not warrant any alteration of its parenting plan. Having considered Mother's argument, we are simply not left with a firm belief that the trial court's judgment is wrong.

Mother's Point I on appeal is denied.

## Point II

In her second point, as amended by her Reply Brief, Mother claims that the trial court's findings regarding section 452.375.2(2) ("[t]he needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of the parents to actively perform their functions as mother and father for the needs of the child") and section 452.375.2(4) ("[w]hich parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent") are against the weight of the evidence because the trial court (1) failed to adequately weigh her historic role as the primary caregiver for the child prior to the couple's separation, (2) failed to adequately weigh the differences in the work schedules of Mother and Father in determining which parent was able to care for the child, (3) improperly failed to find that she was more willing than Father to co-parent the child and had the greater ability and willingness to provide for the child's needs in light of Father's failure to support some of the activities she had enrolled the child in, and (4) improperly failed to find that she was more likely than Father to ensure that both parents enjoyed frequent and meaningful contact with the child in light of Father's failure to grant her more time with the child than provided in the *Pendente Lite* parenting schedule.

12

In her first sub-point, Mother contends that the trial court's findings were against the weight of the evidence because the trial court failed to adequately weigh her historic role as the primary caregiver for the child prior to the couple's separation and the limited role that Father had played up until that time. She contends that the trial court should not have placed any weight on Father's post-separation behavior and his testimony regarding the role he intends to play in the child's life post-dissolution.

Mother cites three cases that she argues "strongly support a reversal and remand to the trial court based on this issue alone." In all three of those cases, however, the appellate court merely noted evidence of a spouse's pre-separation lack of involvement with a child as evidence supporting the trial court's award of "primary physical custody" or more parenting time to the other spouse. *See Shelby v. Shelby*, 130 S.W.3d 674, 678 (Mo. App. S.D. 2004); *Doynov v. Doynov*, 149 S.W.3d 917, 924 (Mo. App. W.D. 2004); *Farley v. Farley*, 51 S.W.3d 159, 163 (Mo. App. S.D. 2001). The cases noted that the trial court was not required to place much weight on the spouse's change in behavior following separation. In so doing, those cases were simply viewing the evidence in the light most favorable to the trial court's judgment, as required by our standard of review. These cases are, therefore, inapposite.

In the case at bar, the judgment clearly reflects that the trial court took into account the role that both parents played in the child's life prior to the separation, discussing it extensively. The Court ultimately found that Father's testimony was credible and that his parenting efforts post-separation were indicative of how he would behave in the future. The trial court found that "the evidence demonstrated the ability

13

and willingness of both parents to actively perform their functions as mother and father for the needs of the child" and that this factor favored neither parent. In light of our standard of review, we must defer to the trial court's credibility determinations and its weighing of the evidence. The evidence related to the roles played by Mother and Father prior to their separation does not render the trial court's findings against the weight of the evidence.

In her second sub-point, Mother argues that the trial court failed give adequate weight to the differences in the work schedules that she, as a teacher, and Father, as a farmer, have. She contends that, because of Father's work schedule (approximately 8 a.m. to 6 p.m.), the child will be spending the majority of his "waking hours" with his paternal grandmother, while Mother's work schedule would allow her to take care of the child whenever he was not in school. She claims that "[b]ecause Father has not historically been, is not at present, and will not be able (for the foreseeable future) to personally care for Carter, it was reversible error to fail to award Mother the residential designation and/or the majority of the parenting time."

Certainly, in determining what is in the best interests of a child, "the hours and schedules worked by a parent may be a factor." *Thorp*, 390 S.W.3d at 878. Indeed, the judgment in the case at bar reflects that the trial court extensively considered the evidence related to the work schedules of the parties. The court noted, however, the level of flexibility Father had to adjust his schedule to meet the child's needs and the child's enjoyment of being with Father while he was working. The court ultimately found that the parties' work schedules alone were not outcome determinative and that it was still in

14

the child's best interest to have Father's home designated as the child's residence and for Father to be awarded more parenting time than Mother. It is not for this court to reweigh the evidence, even if the evidence may have supported another conclusion. *Id*. The evidence related to the parties' respective work schedules, viewed in accordance with our standard of review, simply does not render the trial court's findings against the weight of the evidence.

In her next sub-point, Mother argues that the trial court erred in failing to find that she was more willing than Father to co-parent the child and had the greater ability and willingness to provide for the child's current and future needs. Mother claims that the evidence reflects that prior to the couple's separation she had arranged for all of the child's church, educational, and other extracurricular activities and that, after they separated, Father had interfered with her continuing to do so by refusing to yield his parenting time for the child to participate in various activities she chose for him. She contends that this establishes that Father would not support educational and enrichment activities for the child in the future.

In its judgment, the trial court stated:

> At case management conference held in June, 2013, the Court came to realize [Mother] had not fully realized the nature of co-parenting in a joint legal custodial arrangement. It became somewhat apparent that Respondent was acting unilaterally concerning activities the child had a history of engaging in prior to the parties' separation. Once the parties separated, it became necessary for them to discuss and agree on the child's activities, even ones he had engaged in prior to their separation and to make arrangements as to how those matters would overlap or interfere with each parent's physical custodial time. Prior to separation this was not necessary and the parties may very well have conducted themselves differently, but post separation they must mutually agree even if they did not have to be so

15

formal in the past. The Court believes with this clarification of expectations that [Mother] and [Father] will be able to establish a course of conduct whereby they will be able to effectively co-parent.

Again, Mother asks this court to reweigh the evidence, and we decline to do so. The trial court clearly found credible Father's testimony regarding his willingness and ability to work together with Mother to co-parent the child. Viewing the evidence in the light most favorable to the judgment, the trial court's finding that "[t]he evidence demonstrated the ability and willingness of both parents to actively perform their functions as mother and father for the needs of the child" is not against the weight of the evidence.

In her final sub-point, Mother argues that the trial court erred in failing to find that she was more likely than Father to ensure that both parents enjoyed frequent and meaningful contact with the child. She points to an instance where she called Father shortly before she was scheduled to return the child to see if she could drop the child off late so that the child could finish a reading program she had chosen for him. She also argues that Father's failure to give her more parenting time than set forth in the *Pendente Lite* Parenting Plan indicates that he was not likely to ensure that she receive frequent and meaningful contact with the child.

Once again, the trial court was not required to place much weight upon the evidence relied upon by Mother. The trial court found credible Father's testimony that he had been fearful of deviating from the provisions of the *Pendente Lite* parenting plan prior to trial. The record does not reflect that Father ever prevented Mother from having any of the parenting time allotted to her in the *Pendente Lite* order and that, in fact, he

16

had allowed her to have custody of the child on Good Friday when both she and the child did not have school. The record further reflects that Father does not restrict telephone contact between Mother and child and that Mother had been able to call the child every morning before school and every evening before bedtime. Furthermore, as noted in the judgment, Father's proposed parenting plan called for Mother to receive parenting time on all school days that both she and the child had off and, overall, proposed that Mother receive a significantly larger amount of parenting time that she proposed affording him in her parenting plan. The trial court's finding that neither parent was appreciably more likely to allow the child frequent, continuing and meaningful contact with the other parent is clearly is not against the weight of the evidence.

Mother's Point II on appeal is denied.

## Point III

In her third point, as modified by her Reply Brief, Mother contends that the trial court's findings related to section 452.375.2(1) ("[t]he wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties"), section 452.375.2(3) ("[t]he interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests"), and section 452.375.2(8) ("[t]he wishes of the child as to the child's custodian") were against the weight of the evidence because the trial court (1) failed to adequately consider and weigh the child's desire to have more frequent overnight visits with her and (2) failed to adequately consider and weigh the parties wishes and proposed parenting plans. She further contends that the trial court improperly applied the law by (1) failing to issue

17

sufficient section 452.375.2 findings related to its rejection of the parenting plans proposed by the parties and (2) failing in its parenting plan to include a sufficient dispute resolution procedures and to provide for several holidays and Father and Mother's birthdays. Finally, Mother contends that the trial court's findings are against the weight of the evidence because the right of first refusal provision gave undue preference to the child's paternal grandmother. As to this final sub-point, for which both the challenged findings of the trial court and the requested standard of review seem wholly inappropriate, in the argument portion of her Brief, Mother asserts a claim that the language of the trial court's right of first refusal provision was insufficient under the law and that its adoption was contrary to Missouri public policy and constituted an abuse of discretion. Despite the lack of continuity between the claim of error asserted in the sub-point, the standard of review we are to apply to this sub-point according to Mother's Reply Brief, and the argument actually made in the Brief, we gratuitously presume Mother intended review of the claim made in the argument portion of her Brief.

In her first sub-point, Mother contends that the trial court failed to adequately consider the wishes of the child in making its determinations regarding its parenting schedule. Mother notes that Father, when questioned about his proposed parenting plan, testified:

> Q: And the breakup is three nights – I mean the longest he'd be with one parent is three nights?
>
> A: Yes.
>
> Q: Do you think that's in Carter's best interest?

18

A:    Yes.

Q:    Okay.  Why is that?

A:    Because it seems like on the four days and the five days that he's had has been too much, and he's made that comment to me more than once.

Q:    Let's stop you right there so we don't talk about what he said.  So you think the split up is good?

A:    I think it's fair.

Mother contends that this testimony reflects that the child desired more overnight visitation with her and that the trial court, therefore, erred in failing to grant her more than six overnight visits per month during the school year.[6]

Once more, it was for the trial court to assess the credibility of the referenced testimony and to determine how much weight to afford it.  The trial court specifically found that it was not in the child's best interest to spend the night with Mother during the school week because of how early he would have to be awakened and dropped off at school to accommodate Mother's work schedule.  The trial court clearly felt those concerns outweighed any desire by the child to spend the night more frequently with Mother.  We must defer to the trial court's credibility determinations and its weighing of the evidence.

Mother next argues that the trial court erred in failing to adequately consider the wishes of the parents and their proposed parenting plans.  She contends that it was improper for the trial court to award her less overnight visitation during the school year

---

[6] Mother also appears to take issue with the trial court's finding that there was no evidence presented regarding "the wishes of the child as to the child's custodian."  Contrary to Mother's position, however, evidence that a child does not wish to go an extended period between overnight visits is not the same as evidence regarding who the child wishes to serve as his or her custodian.

19

than was provided for in Father's proposed parenting plan. She further contends that the trial court should have adopted the provisions of Father's proposed parenting plan giving Mother custody of the child overnight on Wednesdays and during the day on school days that both she and the child had off.

Mother has not included the parties' proposed parenting plans, which were admitted as exhibits at trial, in the record on appeal.[7] Instead, she attempts to rely upon isolated testimony offered by Father and Mother at trial about various aspects of the parenting schedules included in their respective proposed parenting plans. Without having the proposed parenting plans to review, this Court cannot assess the extent to which the overall parenting time awarded to Mother differed from that proposed in Father's parenting plan. Indeed, from Father's testimony, it is clear that the trial court awarded significantly more parenting time to Mother over the summer than was proposed by Father in his parenting plan. By failing to include the proposed parenting plans in the record on appeal, Mother has largely rendered it impossible for this Court to consider her claim.

Even were we able to address this claim based solely upon the referenced testimony, Mother is again asking this Court to reweigh the evidence. The judgment clearly reflects that the trial court took into account the proposed parenting plans of both parties as well as testimony from the parties regarding their wishes. It then clearly articulated its reasons for determining that mid-week overnight visitation with Mother was not in the child's best interests. It was for the trial court to decide how much weight

---

[7] Indeed, she has not submitted any of the trial exhibits on appeal.

20

to give the testimony relied upon by Mother on appeal, and we must affirm the trial court even if the evidence could have supported a different conclusion.

In her next sub-point, Mother argues that the trial court committed reversible error by failing to make sufficient findings regarding its rejection of the parties' proposed parenting plans. Where the trial court rejects the proposed parenting plans and adopts one of its own, the court is required under section 452.375.6 to identify the specific relevant factors that led it to adopt the parenting plan it chose and to reject each of the parties' proposals. *Hall v. Hall*, 336 S.W.3d 188, 195 (Mo. App. W.D. 2011). Mother claims that the trial court's judgment fails to provide sufficient, detailed findings regarding why the court rejected various provisions of Mother and Father's proposed parenting plans.

Mother failed to raise this issue with the trial court in a motion to amend the judgment. Indeed, the provisions related to custody and parenting time remained the same in all three of the judgments issued by the trial court, and Mother failed to assert a claim that the court's findings were insufficient to explain its rejection of the proposed parenting plans in response to any of those judgments.

Rule 78.07(c) provides that "[i]n all cases, allegations of error relating the form or language of the judgment, ***including the failure to make statutorily required findings***, must be raised in a motion to amend the judgment in order to be preserved for appellate review." (emphasis added) Having failed to comply with this requirement, Mother's

21

claim is not preserved for appellate review and will not be addressed by this Court.[8] *See Thomas v. Moore*, 410 S.W.3d 748, 755 (Mo. App. W.D. 2013); *Barker v. Barker*, 412 S.W.3d 457, 458-59 (Mo. App. S.D. 2013); *Querry v. Querry*, 382 S.W.3d 922, 928 n.2 (Mo. App. W.D. 2012); *Wood v. Wood*, 262 S.W.3d 267, 276 (Mo. App. S.D. 2008).

In her next sub-point, Mother argues that the trial court's parenting plan erroneously fails to include some of the specific provisions mandated by section 452.310.8. She claims that the dispute resolution provisions are insufficient. She further claims that the parenting plan fails to account for several standard holidays or Mother and Father's birthdays.

Section 452.310.8(2) requires that a parenting plan contain "[a] dispute resolution procedure for those matters on which the parties disagree or in interpreting the parenting plan." In this regard, the trial court's parenting plan provides:

> If the parties disagree concerning the child or interpreting this plan, they shall confer with each other as necessary and consider each other's opinions. Should the parents be unable to agree, then the parties may use the services of their respective attorneys in reaching a reasonable and amicable resolution. The parties may utilize the services of a qualified mediator to resolve their respective differences concerning this Parenting Plan, but such mediation will occur only upon the agreement of the parties. Neither party shall seek Court intervention prior to requesting the other party mediate. In the event of mediation, both parties shall attempt mediation of any dispute in good faith keeping an open mind to consider

---

[8] We gratuitously note that, while the judgment could possibly have been more clear in expressing the reasons that the parties' respective parenting plans were rejected, the judgment certainly expressed the court's reasons for rejecting Mother's parenting plan, which called for her home to be designated as the child's residence and for her to be awarded the majority of the parenting time, through its findings supportive of its conclusion that it was in the child's best interest to remain in the family home and for Father to be awarded the majority of the parenting time. The court also clearly expressed its reasoning for rejecting the mid-week overnight parenting time proposed in Father's parenting plan. As Father's proposed parenting plan has not been included in the record on appeal, it would be exceedingly difficult, if not impossible, for this Court to assess the extent to which the trial court's parenting plan differed in other respects from that of Father.

the position of the other giving always the highest consideration to what is in the best interests of their child and not themselves.

Mother argues that these dispute resolution provisions are insufficient to meet the statutory requirement that the parenting plan contain a dispute resolution procedure. She cites no authority for that proposition, and we find none. The parenting plan clearly contains a dispute resolution procedure. That Mother is not satisfied with the procedure established by the trial court does not render it legally insufficient to meet the statutory requirement.

With regard to parenting time, section 452.310.8(1) requires that a parenting plan have a specific written parenting time schedule that addresses "[m]ajor holidays," "[s]chool holidays for school-age children," and "[t]he child's birthday, Mother's Day and Father's Day." The trial court is not free to disregard any of the enumerated events.[9] *Alred v. Alred*, 291 S.W.3d 328, 335 (Mo. App. S.D. 2009). The statute does not require that the parenting plan contain any provision related to the respective parent's birthdays, though certainly such provisions may be desirable, so the trial court cannot be deemed to have committed reversible in that regard. Mother is correct, however, that the trial court improperly failed to address Presidents' Day and Martin Luther King Jr. Day, both of which are school holidays specifically referenced in the Parenting Plan Guidelines issued by the Missouri Supreme Court, and may have failed to address other school holidays not specifically identified in Mother's brief. The failure to account for such holidays in the

---

[9] "Although each of these days must be specifically addressed, how and with whom such contact occurs is left to the court's discretion and shall be in the best interest of the child." *Alred*, 291 S.W.3d at 336 (internal quotation omitted).

23

parenting plan constitutes reversible error. *Murphey v. Murphey*, 207 S.W.3d 679, 686 (Mo. App. S.D. 2006); *see also D.M.K. v. Mueller*, 152 S.W.3d 922, 930 (Mo. App. S.D. 2005) (reversing dissolution judgment because the parenting plan failed to address Father's Day); *Davis v. Schmidt*, 210 S.W.3d 494, 508 n.9 (Mo. App. W.D. 2007) (noting that parenting plan's failure to account for the child's birthday was reversible error). Accordingly, the judgment is reversed, and the cause is remanded to the trial court to modify its parenting plan to properly account for all school holidays.[10]

In her final sub-point, Mother argues that the trial court abused its discretion in drafting the right of first refusal provision contained in the parenting plan and that the language of that provision warrants reversal. That provision states:

> **"First Right" child care**: In the event while either party has physical custody of the child and has an occasion to need child care services of a non-routine nature, absent exigent circumstances, he or she shall make reasonable effort to contact the other parent to determine if the other parent is able to provide child care services for the time required. The time required may be of any duration depending upon the circumstances and needs then existing.
>
> "Non-routine nature" shall include by not be limited to non-work related child care needs, work related needs where the work needs were out of the ordinary routine for the party, a conflict that was unplanned and unexpected, special social or work related events or occasions such as weddings, funerals or holiday party's [sic], or obligations of a parent such as but not limited to club meetings, and doctor appointments.

Mother argues that this provision would improperly allow Father, if he so desired, to have the paternal grandmother, rather than Mother, watch the child after school and over the summer during Father's regular work hours.

---

[10] "In the event the trial court concludes that some adjustment is required in the time division previously allowed in order to meet requirements of § 452.310.[8], the trial court may, in its discretion, make the changes it deems necessary and appropriate." *D.M.K. v. Mueller*, 152 S.W.3d 922, 930 (Mo. App. S.D. 2005).

Mother cites no authority for her contention that the provision drafted by the trial court was improper. In fact, she cites no authority indicating that it would be reversible error for a trial court to entirely fail to include a right of first refusal provision in its parenting plan. In addressing Mother's post-judgment arguments in this regard, the trial court expressly found that such micromanagement was unnecessary in light of the parties' history and expressed ability to work together. That finding is certainly supported by the evidence. On the record before us, we simply cannot deem it to be reversible error for the trial court not to go as far as desired by Mother in drafting this provision.[11]

## Conclusion

The trial court erred in failing to address parenting time related to multiple school holidays in its parenting plan since section 452.310.8(1) requires that all parenting plans specifically address "school holidays for school-age children." As a result, the judgment is reversed, and the cause is remanded to the trial court to address that deficiency in its parenting plan. In all other respects, the judgment is affirmed.[12]

_____
Cynthia L. Martin, Judge

All concur

---

[11] While Mother contends that the language of the right of first refusal provision in the judgment will result in the child "spending much, if not most, . . . of his 'waking hours' with his grandmother rather than his Father or his Mother," a fair reading of the provision does not support that conclusion, and the record does not establish that that will be the case.

[12] In closing, we would note that the record certainly supports the trial court's finding that Mother and Father are both good parents who have the ability to work together in the child's best interests and to act in a manner supportive of the other parent's relationship with the child. Mother and Father are certainly encouraged to work together to resolve any issues that arise between them in that spirit.