

# In the Missouri Court of Appeals
## Eastern District
### DIVISON FOUR

| | | |
|---|---|---|
| PAMELA DEMARS, | ) | No. ED102328 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | |
| | ) | |
| GARY BUNTENBACH, | ) | Honorable Ted C. House |
| | ) | |
| Respondent. | ) | Filed: December 8, 2015 |

## *Introduction*

Pamela Demars (Wife) appeals the judgment of contempt of the Circuit Court of St. Charles County ordering her to transfer 960 shares of stock to Gary Buntenbach (Husband). We affirm.

## *Factual and Procedural Background*

Husband and Wife married in March 1996. On September 5, 2013, the trial court entered a judgment of dissolution (Dissolution Judgment) incorporating the parties' marital settlement agreement. Paragraph 7 of the Dissolution Judgment provided, in pertinent part:

> Husband and Wife shall receive one-half of the marital interest . . . of all marital units purchased for any retirement, 401(k), savings plan, MasterCard accumulation plan, pension, or any other related plans that Wife may have through her current employer, including any gains and/or losses from date of Judgment until the proceeds are distributed. . . .

Paragraph 7 also divided equally the stock shares that Wife received from her employer, MasterCard:

Husband and Wife acknowledge that Wife has been granted and/or awarded MasterCard stock during the marriage with a current balance of 232.0470 [sic] vested[,] and unvested balance to be determined as of the date of the Judgment, which has a current balance of 192 shares. Wife acknowledges no other stock awards. Husband shall receive 116 shares of vested stock and 96 shares of unvested stock. . . .

The attached settlement agreement contained the same language.[1]

In November 2013, Wife filed a motion for contempt alleging that Husband failed to transfer title of Wife's vehicle and file tax returns as required by the Dissolution Judgment. Wife also filed a motion to determine sums due alleging that Husband "failed and refused to pay his portion of the yacht expenses." Husband filed answers and a cross-motion for contempt.

In May 2014, Husband filed an amended motion for contempt and a "motion to determine amounts due and to enforce judgment." Those motions contained the following identical allegations relating to Wife's MasterCard stock: (1) the Dissolution Judgment awarded Husband 96 shares of unvested MasterCard stock; (2) the stock vested on February 28, 2014; (3) "[t]he stock split 10:1 within thirty (30) days prior to the vesting date."; (4) "[d]ue to the stock split, [Husband] owns Nine Hundred Sixty (960) shares of MasterCard stock"; and (5) Wife had "failed and refused to take the steps necessary" to transfer the stock to him. Husband later filed a "brief with respect to implications of the MasterCard stock split."

In her memorandum opposing Husband's motion for contempt, Wife argued that Husband was entitled to only 96 shares of the previously unvested MasterCard stock because "[t]here was no language in the [Dissolution] Judgment that awarded Husband any further rights to the Stock." According to Wife, Husband was "essentially seeking from this court an order to

---

[1] On October 4 and October 7, 2013, the trial court entered amended judgments by interlineation relating to the division of Wife's MasterCard Savings Plan.

2

amend the judgment" and the court "has no jurisdiction to act in any manner other than enforcement of the Judgment as written."

In August 2014, the trial court held a hearing on the parties' motions for contempt. In regard to the MasterCard stock, Wife testified that, at the time the Dissolution Judgment was entered, she owned 232 vested shares of MasterCard stock and she transferred 116 vested shares to Husband on October 1, 2013. She further testified that she attempted to transfer 96 shares of the previously unvested stock to Husband in May 2014, but he did not respond to her communications.

On cross-examination, Wife affirmed that the trial court had awarded Husband and her each 116 shares of vested stock, which had since split. Wife stated that the 96 shares of unvested stock awarded Husband also split and subsequently vested in late February or early March 2014. When Husband's counsel asked Wife, "So you had 96 shares of unvested stock, too. So you received 960 shares of stock after it split?," Wife answered, "Yes." Wife stated that she was unable to transfer the 96 shares to Husband before they vested, but "hypothetically, if [she] were able to transfer the 96 shares to [Husband] and there was a ten to one stock split," Husband would now have 960 shares.

Husband similarly testified that he received the 116 vested shares of MasterCard stock, but the 96 shares of previously unvested stock were nontransferable at the time of the dissolution. Husband stated that "hypothetically, if those shares were transferable to [him] at the time of the divorce," he would have an additional 960 shares.

At the close of evidence, the trial court found both parties in contempt. In regard to the MasterCard stock, the trial court found:

> [Wife] is in contempt for failure to pay the 96 shares of stock. And that has –
> we finally got to the evidence that it split and that needs to be multiplied by

3

ten. There was sufficient evidence of that. And clearly the decree contemplates that – I mean, at the time it was 96 shares, but it also listed – it would be unjust to just limit it now to 96 shares after the split. Clearly the decree contemplated the total number of shares and that . . . of the unvested shares that are now vested, that should be 960 shares. So that – that should have been paid. If the decree just said give him 96 shares, you got a better argument. But it listed the total number of shares, and I think it clearly contemplated that percentage of those unvested shares, basically half of them, should go to [Husband]. And so half of the unvested shares that are now vested needs to go to [Husband]. And the Court finds that's 960 shares.

On October 10, 2014, the trial court entered a "contempt order and judgment and determination of amounts due" (Contempt Judgment), stating, inter alia, "[t]he Court finds that [Husband] is entitled to 960 Shares of MasterCard Stock in the name of [Wife] plus or minus any earnings or losses, including stock splits and dividends, on said Stock from the date of this Judgment to the date said Stock is distributed to [Husband]." The trial court ordered Wife "to immediately tender said shares to [Husband]."

Approximately two months later, the trial court entered an "amendment by interlineation of judgment of contempt and determination of amounts due" explaining its finding that Husband was entitled to 960 shares of MasterCard stock. The trial court stated:

On September 5, 2013, this Court awarded [Husband] 96 Shares of MasterCard Stock. This Court finds upon credible evidence presented to it by [Husband] and [Wife] that prior to the time that the Shares awarded to [Husband] vested and became transferrable to [Husband], the MasterCard Stock split 10:1, and the number of shares of all MasterCard Stock, including [Husband's] shares, multiplied by ten. [Husband's] original award and interest in MasterCard Stock did not change as a result of the stock split. Had the 96 shares of MasterCard been transferrable to [Husband] on the date of the Judgment, said shares would have been titled in his name at the time the stock split occurred, and 960 shares of MasterCard Stock would be titled in his name. Despite the lack of title in said shares on the date of the split, [Husband] retained his interest and award in said shares, and when the stock split occurred, the number of his shares decupled. Hence, this Court finds that [Husband] is entitled to 960 Shares of MasterCard per the original award.

Wife appeals.

4

*Standard of Review*

"Our standard of review in a dissolution action is governed, as in any court-tried case, by the standard set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)." Wennihan v. Wennihan, 452 S.W.3d 723, 727 (Mo.App.W.D. 2015) (quotation omitted). "We will affirm the decree of dissolution unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." Id. (quotation omitted).

*Discussion*

In her sole point on appeal, Wife claims the trial court erred in finding that Husband was entitled to 960 shares of MasterCard stock. More specifically, Wife contends that the trial court "lacked jurisdiction to amend and or modify the terms of the Dissolution Judgment," which, pursuant to Rule 75.01, became final thirty days after its entry. Husband counters that Rule 74.07 authorized the trial court to enforce the terms of the original judgment and order Wife to "retitle to [Husband] the shares [Husband] gained due to the stock split of the shares awarded."

Wife correctly asserts that, pursuant to Rule 75.01, a court generally loses its power to correct, amend, vacate, reopen or modify a judgment on its own motion after thirty days from the entry of the judgment. Rule 75.01;[2] Wiss v. Spitzmiller, 425 S.W.3d 157, 162 (Mo.App.S.D. 2014). However, "Rule 75.01 serves merely as a bar to the court's right to alter, modify, or change its judgment, [ ] it does not prevent the court from enforcing its judgment as originally entered." Multidata Sys. Int'l Corp. v. Zhu, 107 S.W.3d 334, 339 (Mo.App.E.D. 2003).

---

[2] Rule 75.01 provides, in pertinent part:

> The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time. Not later than thirty days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party, and every order granting a new trial shall specify the grounds therefor.

"[C]ourts have inherent power to enforce their own judgments and should see to it that such judgments are enforced when they are called upon to do so." Id. (quoting Lake Thunderbird Prop. Owners Ass'n, Inc. v. Lake Thunderbird, Inc., 680 S.W.2d 761, 763 (Mo.App.E.D. 1984)).

Furthermore, Rule 74.07 expressly authorizes a trial court to enforce "a judgment [that] directs a party to execute or deliver a deed or other document or to perform any other specific act[.]"[3] Under Rule 74.07, when a party "fails to comply [with a trial court order] within the time specified," a trial court may employ its contempt powers "to compel obedience to the judgment." Rule 74.07. The import of Rules 75.01 and 74.07 is that "a trial court may enter an order to enforce its judgment provided it does not 'alter, modify or change' the judgment." Wiss, 425 S.W.3d at 165.

In this case, the Dissolution Judgment provided that Wife's 192 shares of unvested MasterCard stock was marital property, and it ordered Wife to transfer 96, or one half, of those shares to Husband. In his motion for contempt, Husband alleged that, prior to their vesting date in February 2014, Husband's 96 shares of MasterCard stock split ten-to-one so that Husband now owned 960 shares, which Wife "failed and refused" to transfer to him. Husband therefore requested the trial court order Wife to transfer to him the shares awarded him by the Dissolution

---

[3] Rule 74.07 states:

> If a judgment directs a party to execute or deliver a deed or other document or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court, and the act when so done has like effect as if done by the party. On application of the party entitled to performance, a writ of attachment or sequestration shall issue against the property of the disobedient party to compel obedience to the judgment. If real or personal property is within the state, the court may enter a judgment divesting the title of any party and vesting it in others in lieu of directing a conveyance thereof, and such judgment has the effect of a conveyance executed in due form of law. When any order or judgment is for the delivery of possession, a writ of possession may issue to put the party entitled into possession, or attachment or sequestration may issue.

Judgment. At the August 2014 hearing on the parties' motions for contempt, Husband and Wife each testified that: (1) Wife could not transfer the 96 unvested shares to Husband until they vested; (2) before the 96 shares vested, they split ten-to-one, thus converting to 960 shares; (3) after Husband's 960 shares vested in February 2014, Wife refused to transfer them to Husband on the grounds that the Dissolution Judgment awarded him only 96 shares.

Based on our review of the record, we conclude that the trial court, in finding Wife in contempt and ordering her to tender Husband 960 shares of MasterCard stock, was simply enforcing the Dissolution Judgment. According to the Dissolution Judgment, the MasterCard stock was marital property and Husband was entitled to 96, or one-half, of the unvested shares. When those stocks split ten to one, Husband was entitled to the resulting 960 shares. See, e.g., Shriners Hospitals for Crippled Children v. Emrie, 347 S.W.2d 198, 201 (Mo. 1961) ("A stock split. . . is a mere change in form of the stockholder's interest in the company and not a change in the substance of the property."). Thus, in ordering Wife to transfer to Husband 960 shares of MasterCard stock, the trial court was merely acting to enforce its prior judgment. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
Patricia L. Cohen, Judge

Sherri B. Sullivan, P.J., and
Kurt S. Odenwald, J., concur.

7