

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| BRENDA L. JACKSON, | ) |
| | ) |
| Respondent, | ) |
| | ) WD85431 |
| v. | ) |
| | ) OPINION FILED: |
| | ) August 29, 2023 |
| MISSOURI STATE BOARD OF | ) |
| NURSING, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division One:** Gary D. Witt, Chief Judge, Presiding, and
Mark D. Pfeiffer and Anthony Rex Gabbert, Judges

The Missouri State Board of Nursing ("Board") appeals from the judgment of the

Circuit Court of Cole County, Missouri ("circuit court"), reversing the Board's decision

placing Ms. Brenda Jackson's ("Jackson") nursing license on probation for multiple

convictions for driving under the influence of alcohol. We affirm the circuit court's

judgment.[1]

---

[1] In an appeal from the circuit court's judgment following judicial review of an
administrative agency's action, we review the action of the administrative agency and not
the judgment of the circuit court. *Kubiak v. Mo. State Bd. of Nursing*, 667 S.W.3d 230,

## Factual and Procedural Background

Since 2012, Jackson has been licensed by the Board as a registered professional nurse in Missouri.[2] She also held a nursing license in the State of Kansas.

On August 22, 1997, Jackson entered into a Diversion Agreement following a charge of driving under the influence ("DUI") in the Municipal Court of Westwood, Kansas. The Diversion Agreement provided that if Jackson successfully completed all of its terms and conditions, the charges diverted by way of the agreement would be dismissed with prejudice. The terms and conditions of the agreement were in effect until August 22, 1998.

On November 7, 2002, Jackson was convicted of DUI in the Municipal Court of Prairie Village, Kansas, and was given a suspended imposition of sentence with one year of probation with conditions.

_____

234 (Mo. App. W.D. 2023). "However, in our mandate, we reverse, affirm, or otherwise act upon the circuit court's judgment." *Wagner v. Mo. State Bd. of Nursing*, 570 S.W.3d 147, 150 n.1 (Mo. App. W.D. 2019) (citing Rule 84.14).

Pursuant to Rule 84.05(e), if the circuit court reverses the administrative agency's action, the party aggrieved by the circuit court's judgment (here, the State) files the notice of appeal and the record on appeal; the party aggrieved by the agency action (here, Jackson) files the appellant's brief and reply brief. Accordingly, we will address Jackson's points on appeal.

[2] We note that at oral argument, the Board's counsel intimated that this case was distinguishable from *Kubiak*, 667 S.W.3d 230, because the present case involves a procedural history of *felony* DUI convictions as opposed to simply *misdemeanor* DUI convictions. First, we note that there is no such distinction referenced in *Kubiak* when addressing the statutory due process directives mandated by our legislature. Second, here, the *felony* DUI convictions occurred *before* the Board issued Jackson an RN license, and the Board did not assert an action to discipline Jackson until after her 2019 *misdemeanor* DUI conviction. We presume that if the presence of *felony* DUI convictions were "distinguishable" or significant to the Board, the Board would never have issued an RN license to Jackson in 2012 in the first instance.

On October 14, 2004, Jackson pleaded guilty in the District Court of Johnson County, Kansas, to felony DUI (3rd), in violation of K.S.A. section 8-1567, and was given a suspended imposition of sentence with twelve months' probation. The court imposed ten days in jail and eighty days of house arrest as conditions of probation.

On July 29, 2010, Jackson entered a *nolo contendere* plea in the District Court of Shawnee County, Kansas, to felony DUI (4th or subsequent), in violation of K.S.A. section 8-1567(g), and was sentenced to 120 days in jail, followed by twelve months' post-release supervision.

On May 7, 2019, Jackson pleaded guilty in the District Court of Johnson County, Kansas, to the class A misdemeanor of DUI, 3rd offense, in violation of K.S.A. section 8-1567, and was sentenced to fourteen days in jail followed by twelve months' post-imprisonment supervision with conditions.

On January 19, 2021, the Board's general counsel filed a Request for Disciplinary Hearing ("Request"), asking that a hearing be scheduled before the Board pursuant to section 335.066.16(1)(a), to determine whether cause existed to discipline Jackson's nursing license and, if so, what, if any, discipline was appropriate. In the Request, Jackson's five DUI offenses were itemized. The Request alleged that Jackson's "guilty pleas were to offenses involving the qualifications, functions, or duties of the nursing profession and constituted offenses involving moral turpitude."

The Board conducted a disciplinary hearing. Among the documents the Board received into evidence were certified copies of the records from Jackson's municipal and district court DUI cases. Jackson testified regarding the circumstances of each DUI

offense, the punishments imposed, and the counseling and treatment she received after each conviction. She testified that she never drank while working. Jackson stated that she had not had a drink of alcohol since the date of her last offense, July 2, 2018, and described herself as rehabilitated.

The Board issued its Findings of Fact, Conclusions of Law, and Disciplinary Order ("Disciplinary Order"). The Board noted that Jackson's case involved multiple DUI convictions over a period of approximately twenty-two years and concluded that her "repeated DUI offenses are contrary to good morals and the duties one owes other members of society and places the nursing profession in a negative light. Consequently, there is cause to discipline [Jackson's] nursing license for her guilty pleas to crimes that constituted moral turpitude." The Board determined that the appropriate level of discipline for Jackson's license was probation for a period of five years, subject to terms and conditions.

Jackson petitioned for judicial review of the Board's Disciplinary Order. The circuit court noted that the Board proceeded against Jackson for her driving while intoxicated ("DWI") convictions, utilizing the procedures of section 335.066.16 without obtaining a factual determination from the Administrative Hearing Commission ("AHC") that cause existed to discipline Jackson's license. Relying on *Owens v. Missouri Board of Nursing*, 474 S.W.3d 607 (Mo. App. W.D. 2015), the circuit court observed that DWI is an offense where the facts and circumstances must be considered before a determination that such an offense implicates moral turpitude. The circuit court determined that section 335.066.16 did not authorize the "auto-revoke" procedure when

4

DWI is the underlying criminal offense. The circuit court concluded that the Board's action was unauthorized by law and entered judgment, reversing the Board's decision.

The State timely appealed.

## Standard of Review

"'Article V, section 18 of the Missouri Constitution articulates the standard of judicial review of administrative actions.'" *Owens v. Mo. State Bd. of Nursing*, 474 S.W.3d 607, 611 (Mo. App. W.D. 2015) (quoting *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009)). On appeal, we must determine whether the actions of the agency "are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." MO. CONST. art. V, § 18. We will affirm the agency's action unless it:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

§ 536.140.2.[3] "'We will not substitute our judgment for that of the administrative agency on factual matters, but we review any questions of law concerning an agency's decision de novo.'" *Kubiak v. Mo. State Bd. of Nursing*, 667 S.W.3d 230, 235 (Mo. App. W.D. 2023) (quoting *Owens*, 474 S.W.3d at 611).

**Analysis**

Jackson raises two points on appeal.[4] In Jackson's first point, she asserts that the Board erred in finding cause to discipline her nursing license because her guilty plea to DWI is not a crime of moral turpitude or a crime reasonably related to her ability to practice as a nurse. In Jackson's second point, she contends that the Board erred in placing her on probation because the Board lacked statutory authority to do so without finding cause for discipline against her license by the AHC in that DWI is an offense where the facts and circumstances must be considered before a determination that such an offense implicates moral turpitude. The crux of Jackson's appeal is that the Board erred

---

[3] All statutory references are to the REVISED STATUTES OF MISSOURI 2000, as supplemented.

[4] We note that both of Jackson's points relied on contain multifarious claims of error, asserting that the agency's decision was in violation of constitutional provisions (due process); was unsupported by competent and substantial evidence upon the whole record; and was unauthorized by law. Accordingly, Jackson's points violate Rule 84.04. *Wennihan v. Wennihan*, 452 S.W.3d 723, 728 (Mo. App. W.D. 2015). "A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on." *Id*. (internal quotation marks omitted). "Despite this flagrant disregard of the rules, the policy of the appellate courts in this State is to decide a case on the merits rather than technical deficiencies in the brief." *Id*. (internal quotation marks omitted). "Because we are able to discern the claims being made and the defective nature of the point[s] relied on does not impede our disposition of the case on the merits, we will exercise our discretion to attempt to resolve the issues on the merits." *Id*. (internal quotation marks omitted).

6

in entering its Disciplinary Order against her license because the Board lacked statutory authority to do so without the AHC finding cause for discipline against her license, in that a charge of DWI is not a crime of moral turpitude under section 335.066.16 for which the Board can bypass the AHC. Therefore, we will address the points together.

"'This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue.'" *Kubiak*, 667 S.W.3d at 236 (quoting *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)). "When determining the legislative intent of a statute, no portion of the statute is read in isolation, but rather the portions are read in context to harmonize all of the statute's provisions." *Id.* (internal quotation marks omitted).

"A determination of whether cause exists to discipline a nursing license is generally made by the AHC under section 335.066.2." *Id*. "The Board may cause a complaint to be filed with the AHC against any license holder for any one of the twenty-eight enumerated causes." *Id*. (citing § 335.066.2(1)-(28)). One of the causes for discipline that the AHC may find is "[h]abitual intoxication or dependence on alcohol, evidence of which may include more than one alcohol-related enforcement contact as defined by section 302.525." § 335.066.2(21). "In that circumstance, the Board must bring an action before the AHC, and only following the AHC's determination that cause for discipline exists may the Board hold a hearing to determine what level of discipline, if any, to impose on the licensee." *Kubiak*, 667 S.W.3d at 236 (citing § 335.066.3).

"However, in August 2013, the Missouri General Assembly added a provision to section 335.066 allowing the Board to make its own determinations regarding cause for

7

discipline in certain circumstances." *Owens*, 474 S.W.3d at 611 (citing § 335.066.16).

"One such circumstance is where the Board possesses certified court records for an

offense involving the qualifications, functions, or duties of a nurse or for an offense

involving moral turpitude." *Id*. (citing § 335.066.16(1)(a)). Section 335.066.16 provides

in pertinent part:

> (1) The board may initiate a hearing before the board for discipline of any licensee's license . . . upon receipt of one of the following:
>
>> (a) Certified court records of a finding of guilt or plea of guilty or nolo contendere in a criminal prosecution under the laws of any state or of the United States for any offense involving the qualifications, functions, or duties of any profession licensed or regulated under this chapter, for any offense involving fraud, dishonesty, or an act of violence, or for any offense involving moral turpitude, whether or not sentence is imposed;
>
> . . . .
>
> (3) Upon a finding that cause exists to discipline a licensee's license, the board may impose any discipline otherwise available.

In *Owens*, we defined "moral turpitude" as:

> "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellowman or to society in general, contrary to the accepted and customary rule of right and duty between man and man; everything done contrary to justice, honesty, modesty, and good morals."

474 S.W.3d at 612 (quoting *In re Frick*, 694 S.W.2d 473, 479 (Mo. banc 1985)). We

classified crimes involving moral turpitude as:

> (1) crimes that necessarily involve moral turpitude, such as frauds; (2) crimes so obviously petty that conviction carries no suggestion of moral turpitude, such as illegal parking; and (3) crimes that may be saturated with moral turpitude, yet do not involve it necessarily, such as willful failure to pay income tax or refusal to answer questions before a congressional committee.

8

*Id.* (internal quotation marks omitted). Under the first classification, commission of the crime itself establishes that it involved moral turpitude. *Id.* However, if the offense falls under the third classification, "an inquiry must be made into the circumstances surrounding the offense to show moral turpitude." *Id.*

In *Owens*, Owens pleaded guilty to a misdemeanor DWI offense after colliding with another vehicle while under the influence of a prescription drug. *Id.* at 609. Regarding crimes of moral turpitude in the context of a DWI conviction, this Court held that "driving while intoxicated is not a crime involving moral turpitude, especially when dealing with a first offense and a conviction as a misdemeanor." *Id.* at 614. The Board's Disciplinary Order placing Jackson's nursing license on probation acknowledged our holding in *Owens* but distinguished it from Jackson's case because Jackson pleaded guilty to five DWI offenses, which, according to the Board, showed "a recidivist type crime involving an extremely dangerous activity." The Board found that our holding in *Owens* was limited to a single, misdemeanor DWI offense and stated that *Owens* "intimated that multiple offenses of driving while intoxicated are offenses involving moral turpitude." In distinguishing Jackson's case from *Owens*, the Board found that Jackson's "repeated DWI offenses are contrary to good morals and the duties one owes other members of society, and places the nursing profession in a negative light." This is the *identical argument* the Board made in *Kubiak*. 667 S.W.3d at 237 ("In distinguishing this case from *Owens*, the Board found that Kubiak's 'repeated DWI offenses are contrary to good morals and the duties one owes other members of society, and places the nursing profession in a negative light.'").

9

In *Kubiak*, the Board's request for a disciplinary hearing alleged that Kubiak had pleaded guilty to three DWI offenses, in 1998, 2003, and 2021. *Id*. at 233. Following the evidentiary hearing, the Board placed Kubiak's nursing license on probation in accordance with the terms and conditions outlined in the disciplinary order. Kubiak filed a petition for judicial review of the Board's decision. The circuit court reversed the Board's decision and remanded the matter to the Board with instructions to dismiss the action in its present form.[5] On appeal, Kubiak argued that the Board erred in placing his nursing license on probation because it lacked statutory authority to issue a disciplinary order without a finding of cause for discipline by the AHC, in that a plea to a misdemeanor charge of DWI was not a crime of moral turpitude. *Id*. This Court held that the Board could not bypass the AHC and use section 335.066.16 to declare that Kubiak's class B misdemeanor of DWI was an offense involving moral turpitude. *Id.* at 238.

---

[5] The *Kubiak* court noted that:

> The circuit court's judgment stated that the cause was being remanded for dismissal "[f]or the same reasons set out in 'this Court's Judgment of April 25, 2022', in the matter of *Brenda Jackson v. Missouri State Board of Nursing*, Case No. 21AC-CC00181." In *Jackson*, the trial court concluded under similar facts that the Board was statutorily precluded from disciplining a nursing license for a charge of DWI without first obtaining a ruling from "the Administrative Hearing Commission utilizing the procedures of [section] 335.066.16 RSMo.", because DWI is not a crime of "moral turpitude" or a crime related to a nurse's ability to practice as a nurse under [section] 335.066.16(1).

667 S.W.3d at 232 n.2.

As in *Kubiak*, "we are not persuaded to depart from our prior holding in *Owens*, which held that driving while intoxicated is not an offense involving moral turpitude." *Id*. (citing *Owens*, 474 S.W.3d at 614). "When reading section 335.066 in context to harmonize all provisions, it is clear that the legislature intended most causes for discipline to be presented first to the AHC for a determination of cause for discipline before the Board may determine what, if any, discipline to impose." *Id*. "The Board's authority to bypass the AHC and initiate a hearing before the Board is limited to the few offenses listed in section 335.066.16 . . . ." *Id*. We reiterate that:

> In the case of multiple DWI offenses, . . . the legislature has expressed their specific intent that in order for the Board to discipline a nursing license based on habitual intoxication or dependence on alcohol, for which multiple alcohol-related criminal offenses may constitute relevant evidence in support, the Board must first seek a finding that cause exists to discipline the license from the AHC. [§] 335.066.2(21). Only if the AHC finds cause for discipline may the Board impose appropriate discipline under section 335.066.3. The Board may not side-step the legislative directive to first file a complaint with the AHC before disciplining [Jackson's] nursing license under these facts.

*Id*.

We re-affirm our holdings in *Owens* and *Kubiak* that the Board cannot bypass the AHC in this case and use section 335.066.16 to declare that Jackson's multiple DWI offenses are offenses involving moral turpitude. If the Board wants to discipline Jackson's nursing license for committing multiple DWI offenses, it must follow the procedures provided by the legislature. The Board erred in placing Jackson's nursing license on probation because her multiple DWI offenses are not offenses involving moral turpitude.

Jackson's points are granted.

## Conclusion

The circuit court's judgment reversing the Board's Disciplinary Order is affirmed.

_____
Mark D. Pfeiffer, Judge

Gary D. Witt, Chief Judge, and Anthony Rex Gabbert, Judge, concur.