**Lori Lee BREHE, Respondent,**

v.

**MISSOURI DEPARTMENT OF ELEMENTARY & SECONDARY EDUCATION, Appellant.**

**No. WD 66267.**

Missouri Court of Appeals,
Western District.

Feb. 13, 2007.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, for Appellant.

Glen Deidrick Webb, Asst. Atty. Gen., Jefferson City, MO, Arguing on behalf of Appellant.

Jon Edward Beetem, Jefferson City, MO, Arguing on behalf of Respondent.

Before JAMES M. SMART, JR., P.J., EDWIN H. SMITH, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

The Missouri State Board of Education suspended the teaching certificates of Lori Lee Brehe for ninety days after finding that she had pleaded guilty to a "crime involving moral turpitude." The circuit court reversed. The Department of Elementary and Secondary Education appeals. On review of the Board's decision, we reverse.

### Background

Lori Lee Brehe is employed by the Jefferson City School District, where she teaches learning disabled elementary students. On December 31, 2002, while school was out of session, Ms. Brehe left her home in Holt's Summit, Missouri (near Jefferson City) and drove her three children, ages 11, 10, and 2–1/2, to the parking lot at the Isle of Capri Casino in Boonville, Missouri. She left the three children in the car and went into the casino. She remained in the casino for approximately forty-five minutes. By the time she returned to her children, police were at the scene. Apparently, someone had observed the children alone in the car and notified authorities.

Ms. Brehe was charged by information with the class A misdemeanor of endangering the welfare of a child in the second degree, section 568.050.[1] The information alleged that

> on or about December 31, 2002, ... [Ms. Brehe] acted with criminal negligence in a manner that created a substantial risk to the body and health of C.B., a child less than seventeen years old, by leaving said child in a vehicle at the Isle of Capri Casino in Boonville, Missouri, for approximately 45 minutes unattended by an adult.

A couple of months later, Ms. Brehe pleaded guilty in Cooper County Circuit Court to one count of second-degree child endangerment, in violation of § 568.050. The court suspended imposition of sentence and placed Ms. Brehe on one year of probation on the condition that she obey all laws and not go on the premises of the Isle of Capri Casino. She successfully completed her probation on March 21, 2004.

On December 23, 2004, the Department of Elementary and Secondary Education (the "Department") filed a Complaint before the Missouri State Board of Education against Lori Lee Brehe. The Department sought to discipline Ms. Brehe's teaching certificates under section 168.071.1, RSMo, which authorizes discipline where a certificate holder has pleaded to or been found guilty of a felony or a "crime involving moral turpitude." Ms. Brehe moved to dismiss on the basis that the Board had no authority to discipline her certificate because the crime to which she pleaded guilty did not involve moral turpitude. The Board denied her motion.

A hearing was conducted in February 2005 before a hearing officer appointed by the Commissioner of Education. The Department proceeded by introducing the official court record from her criminal case, which included only the information, the probable cause statement, and the court's docket sheets and disposition. The Department presented no evidence as to the facts or circumstances giving rise to the charge. The charging instrument, as already noted, alleged that she, with criminal negligence, acted in a manner "that created a substantial risk to the body and health" of a child less than seventeen years old (referring to her 2-1/2 year-old) by "leaving said child in a vehicle at the Isle of Capri Casino in Boonville, Missouri for approximately 45 minutes unattended by an adult."

After the admission of the official court documents, Ms. Brehe testified briefly in her own behalf about the day's circumstances, indicating that the weather that day was mild and pleasant. She testified the children had no ill effects from being left in the car. She said she went into the casino to contact a friend. She did not acknowledge gambling during the time she was gone, nor was her testimony as to the purpose of her casino visit challenged by the Department. She presented a favorable letter from the Division of Family Services indicating that, after investigation, DFS was satisfied that Ms. Brehe was not in need of services or assistance from DFS. Ms. Brehe also testified that her school district offered her a new teaching contract in spite of its awareness of the incident that led to her criminal conviction. She testified that she no longer leaves her children alone in a vehicle even for a short period of time, such as to go into a gas

1. All statutory references are to the Revised Statutes of Missouri, 2000, unless otherwise

indicated.

station. She also said that the children she deals with at school are never in her vehicle.

On June 7, 2005, the hearing officer issued findings of fact and conclusions of law. The findings and conclusions purport to resolve no factual issues and make no credibility determinations; they simply recite the undisputed facts and reach the following legal conclusion:

> Based upon the notice of hearing and the documentation of the suspended imposition of sentence (SIS), the State Board of Education, pursuant to Mo. Rev.Stat. § 168.071 (Supp.2004), is authorized to suspend or revoke the certification of Lori Lee Brehe.

The Commissioner then recommended to the Board that it "suspend Lori Lee Brehe's certificate of license to teach for 90 days pursuant to its authority under Mo.Rev.Stat. § 168.071[.]"

Based on these recommendations, the Board found that Ms. Brehe's teaching certificates were subject to discipline on the basis of her guilty plea to a "crime involving moral turpitude." The Board voted to suspend Ms. Brehe's certificates for ninety days.

Ms. Brehe appealed the Board's decision to the Cole County Circuit Court, pursuant to section 536.100, without requesting a stay of the Board's order. The ninety-day suspension ended on September 21, 2005. In November 2005, the Circuit Court issued its findings of fact, conclusions of law, and final judgment after considering the record and the arguments. The court reversed the Board's decision, finding that the Board did not have jurisdiction to discipline Ms. Brehe's teaching certificates because the crime of endangering the welfare of a child in the second degree was not necessarily a crime involving moral turpitude. According to the court, second-degree child endangerment generally does not involve "a conscious decision to violate the law," and, therefore, does not implicate "moral turpitude." The court further held that because Ms. Brehe had no notice that her conduct could subject her teaching certificates to discipline, section 168.071.1 is "unconstitutionally vague" as applied to Ms. Brehe.

The Department appeals.

## Point I

The Department says the Board properly suspended the teaching certificates of Ms. Brehe because the Board correctly determined that endangering the welfare of a child in the second degree, section 568.050, is a "crime involving moral turpitude." According to Ms. Brehe, the Board lacked authority to discipline her teaching certificates on the basis of her guilty plea because the culpable mental state for second-degree child endangerment, *i.e.,* criminal negligence, does not implicate a conscious decision to engage in actions that violate the law and, thus, cannot involve moral turpitude.

### *Standard of Review*

In an appeal following judicial review of an administrative agency's decision, we review the decision of the agency, not the judgment of the court. *Mo. Coalition for the Env't v. Herrmann,* 142 S.W.3d 700, 701 (Mo. banc 2004). Here, the first issue posed is a question of law: whether the Board had the legal authority to take any action concerning the teaching certificates. There were no factual disputes before the Board, and no credibility determinations by the hearing officer or the Board. We review questions of law *de novo. Id.*

### *Analysis*

Section 168.071 provides:

1. The state board of education may ..., upon hearing, discipline the holder of a certificate of license to teach for the following causes:

(1) A certificate holder ... has pleaded to or been found guilty of a felony or crime involving moral turpitude under the laws of this state, any other state, or the United States, or any other country, whether or not sentence is imposed[.]

....

6. Other provisions of this section notwithstanding, the certificate of license to teach shall be revoked or, in the case of an applicant, a certificate shall not be issued, if the certificate holder or applicant has pleaded guilty to or been found guilty of any of the following offenses established pursuant to Missouri law or offenses of a similar nature established under the laws of any other state or of the United States, or any other country, whether or not the sentence is imposed:

(1) Any dangerous felony as defined in section 446.061, RSMo, or murder in the first degree;

(2) Any of the following sexual offenses: rape; statutory rape in the first degree; statutory rape in the second degree; sexual assault; forcible sodomy; statutory sodomy in the first degree; statutory sodomy in the second degree; child molestation in the first degree; child molestation in the second degree; deviate sexual assault; sexual misconduct involving a child; sexual misconduct in the first degree; sexual abuse; enticement of a child; or attempting to entice a child;

(3) Any of the following offenses against the family and related offenses: incest; abandonment of a child in the first degree; abandonment of a child in the second degree; endangering the welfare of a child in the first degree; abuse of a child; child used in a sexual performance; promoting sexual performance by a child; or trafficking in children; and

(4) Any of the following offenses involving child pornography and related offenses: promoting obscenity in the first degree; promoting obscenity in the second degree when the penalty is enhanced to a class D felony; promoting child pornography in the first degree; promoting child pornography in the second degree; possession of child pornography in the first degree; possession of child pornography in the second degree; furnishing child pornography to a minor; furnishing pornographic materials to minors; or coercing acceptance of obscene material.

In construing the statute it is helpful to consider the text of the entire statute in context. *See Gott v. Dir. of Revenue*, 5 S.W.3d 155, 159–60 (Mo. banc 1999); *Mary S. Riethmann Trust v. Dir. of Revenue*, 62 S.W.3d 46, 48 (Mo. banc 2001). Here, we note that the statute *authorizing* discipline in some instances specifies that discipline is to be *required* in certain other cases. The legislature drew a distinction within the statute between those offenses as to which the Board *may* apply discipline—a felony, or a crime involving moral turpitude—and those offenses as to which the Board *must* apply discipline—dangerous felonies, first degree murder, rape, sexual assault, and other enumerated offenses.

One of the offenses for which discipline is *mandated* is endangering the welfare of a child in the first degree. Second degree endangerment, a misdemeanor, is not specifically mentioned anywhere in the statute. Thus, it is clear that the Board may discipline for second degree endangerment only if the offense "involves moral turpitude."

## Classifications of Crimes

With regard to the matter of "moral turpitude," it has been said that there are three classifications of crimes. 21 AM. JUR.2D *Criminal Law* § 22 (1998). Those classifications are (1) crimes that necessarily involve moral turpitude, such as frauds; (2) crimes "so obviously petty that conviction carries no suggestion of moral turpitude," such as illegal parking; and (3) crimes that "may be saturated with moral turpitude," yet do not involve it necessarily, such as willful failure to pay income tax or refusal to answer questions before a congressional committee. *Twentieth Century-Fox Film Corp. v. Lardner,* 216 F.2d 844, 852 (9th Cir.1954).

For purposes of aiding the clarity of our analysis, we may sometimes refer to these classifications as categories 1, 2, and 3. It appears, if we may borrow these classifications, that the General Assembly considered some offenses to be category 1 crimes—that is, that is they are crimes that necessarily involve moral turpitude. In such cases, such as first degree murder, rape, and many others enumerated in the statute (including *first degree* child endangerment), it is necessary only for the Department to show that there was a conviction or a guilty plea, whether or not sentence was imposed. An inquiry into the circumstances is unnecessary to create authority for discipline.

It also appears that the General Assembly considered that some offenses could be category 2 offenses (which have no suggestion of moral turpitude and, therefore, do not come within the authority of the Board at all) or category 3 offenses (where the offense does not necessarily involve moral turpitude, but where an inquiry into the related circumstances would tend to show moral turpitude).

The approach taken by the Department here was that second degree child endangerment *necessarily* involves moral turpitude (*i.e.*, that it is a category 1 crime). Accordingly, the Department made no effort to focus on the related factual circumstances of this offense as it might have if it had believed this offense was a category 3 crime. On appeal, the Department does not argue that the hearing officer and the Board must have believed that Ms. Brehe really went to the casino to gamble, despite her assertions to the contrary. In fact, the Department takes no issue with Ms. Brehe's statements. There is no assertion that Ms. Brehe's motives were more depraved than she acknowledges. No facts are asserted to argue the extent of her culpability (such as that the children were worried or upset). The Department simply wishes to have us note that the crime of second degree endangerment requires "criminal negligence," as though "criminal negligence," because it is a level of negligence that warrants governmental punishment, must always and necessarily require a depraved mind and an evil disposition to inflict harm on children.

"Moral turpitude" has been defined as "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellowman or to society in general, contrary to the accepted and customary rule of right and duty between man and man; everything 'done contrary to justice, honesty, modesty, and good morals'." *In re Frick,* 694 S.W.2d 473, 479 (Mo. banc 1985) (*quoting In re Wallace,* 323 Mo. 203, 19 S.W.2d 625 (1929)). Missouri courts have invariably found moral turpitude in the violation of narcotic laws, for example. *Id.* Moral turpitude has also been found in crimes involving fraud and false pretenses, failure to pay federal income taxes, theft, and contributing to the delinquency of a minor. *Id.; In re Duncan,* 844 S.W.2d 443, 444 (Mo. banc 1992).

Many of the cases in Missouri that discuss crimes involving moral turpitude are appeals of attorney disciplinary proceedings brought under Rule 5.20.[2] That rule contains the same "involving moral turpitude" language as the disciplinary rule at issue here. These attorney discipline cases address nonprofessional conduct as well as conduct committed while acting in one's capacity as a lawyer. *See Frick,* 694 S.W.2d at 479. For example, in *In re Duncan,* the Missouri Supreme Court held that the willful failure to pay federal income tax, where the taxpayer had the ability to pay, amounted to moral turpitude. 844 S.W.2d at 445. The Court opined that the attorney's failure to pay his taxes reflected adversely on his honesty and trustworthiness and undermined public confidence in the Bar. *Id.* at 444–45. The Court held, in *In re Shunk,* that a felony conviction for possession of narcotics also is a crime involving moral turpitude. 847 S.W.2d 789, 791–92 (Mo. banc 1993). The Court said that such conduct brings the lawyer's judgment and honesty into question and undermines public confidence in lawyers and the courts in general. *Id.* at 791. In *In re Warren,* the Court held that the willful failure to discharge one's responsibility to support his children without good cause is an act of moral turpitude. 888 S.W.2d 334, 335–36 (Mo. banc 1994). The Court stated that the attorney's willful failure to provide for his children "calls into question his judgment and honesty and erodes the public's confidence in lawyers and the courts in general." *Id.* at

336. Our review of these cases suggests that the Court sometimes disciplines for a category 1 offense, and at other times for a category 3 offense (after the Court has reviewed the circumstances related to the offense).

## Second Degree Endangerment

■ Ms. Brehe says that second degree endangerment does not necessarily involve moral turpitude, because the *mens rea* of second-degree endangerment, "criminal negligence," does not rise to the level of an intentional act, which one would think is usually required for moral turpitude. A person acts "with criminal negligence" when she or he "fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.5.

As Ms. Brehe notes, no Missouri court has found a crime predicated on a *mens rea* of criminal negligence to constitute a crime of moral turpitude. Ms. Brehe also says that as a general rule only crimes that are *malum in se* are considered to be crimes involving moral turpitude. Although it generally is true that crimes which are *malum in se* involve moral turpitude, while those which are *malum prohibitum* do not, that is not always the case. *See* 21 Am.Jur.2d *Criminal Law* § 23 (1998) (*citing Du Vall v. Bd. of Med. Exam'rs of Ariz.,* 49 Ariz. 329, 66 P.2d

**2.** The applicable version of Rule 5.20, which has since been amended and is now Rule 5.21, stated at the time:
   (a) Upon the filing of an information ... that a lawyer admitted to practice in Missouri has pleaded guilty or *nolo contendere* to been found guilty of:
      (1) any felony ...; or
      (2) any misdemeanor ... *involving* ... *moral turpitude;* or

   (3) [other] misdemeanor[s],
whether sentence is imposed or not, this Court shall cause to be served on the lawyer an order to show cause why [he] should not be suspended from the practice of law based upon such plea or finding or professional misconduct that resulted in the plea or finding. .... (Emphasis added.)

1026, 1030 (1937)) (observing that "assault and battery is *malum in se* but rarely involves moral turpitude, while the sale or dispensing or prescribing of narcotic drugs, except for medicinal use and under strict surveillance, does involve . . . moral turpitude, although *malum prohibitum* only").

Here, the Department's complaint cited Ms. Brehe's guilty plea to the misdemeanor of endangering the welfare of a child in the second degree, section 568.050.1(1). The complaint alleged:

> Endangering the welfare of a child is a crime of moral turpitude. The Guilty Plea constitutes cause to discipline the . . . Certificate[s] held by Brehe pursuant to section 168.071.1(1) . . ., in that she pled guilty to a crime of moral turpitude.

The Department based the entire proceeding on the proposition that second-degree endangerment necessarily is a crime of moral turpitude, regarding it as a category 1 offense. The Board accepted this notion. No one, however, cited any authority for the proposition. It seems that the Department's arguments ultimately come down to the notion that the crime is one of moral turpitude because it is a crime and it involves children. The problem with this notion is that the General Assembly obviously believed some crimes involve moral turpitude and some do not. This fact logically eliminates the argument that a crime involves moral turpitude because it involves conduct that has been declared criminal. Otherwise, instead of authorizing discipline for a felony or a "crime involving moral turpitude," the General Assembly could simply have specified that discipline could be imposed for "any crime" or for "any crime involving children."

The legislative purpose of section 168.071.1, according to the Department, is to enable the Board to take remedial measures, including disciplining teaching certificates, in order to protect the public's children. To this end, says the Department, the need to hold a teacher accountable for her failure to be aware of and avoid a "substantial and unjustifiable risk" to children is obvious. If a teacher is careless with her own children, it reflects poorly on her professionalism as a teacher. We are not unsympathetic to the thought behind that argument. We simply do not see that we can say, in interpreting the plain language of the statute, that the legislature intended that the Department could rest solely on the fact that a teacher pleaded guilty to second degree child endangerment, without a showing that the circumstances were such as to demonstrate moral turpitude. The legislature restricted the Board's authority to discipline so that the Board could discipline only for the commission of a felony or an offense "involving moral turpitude." The Board could discipline when the offense *necessarily* involves moral turpitude (as in the case of a category 1 crime). The board could also exercise discipline when the related circumstances are such as to demonstrate actual moral turpitude (in the case of a category 3 crime). The Department was not precluded in this case from showing any circumstances indicating that Ms. Brehe was guilty of moral turpitude. The Department did not do so.

In *Bowalick v. Commonwealth*, 840 A.2d 519 (Pa.Commw.Ct.2004), where a teacher pleaded guilty to simple assault, the court concluded that simple assault is "not necessarily" a crime involving moral turpitude; therefore, the Commission erred in revoking the teacher's certificates without a hearing. *Id.* at 525. Here, although technically speaking there was a hearing, there was no inquiry into the issue of moral turpitude other than the evidence

brought by Ms. Brehe, who sought to introduce facts to mitigate the extent of the discipline. The Department rested solely on the elements, of the charged offense as demonstrating moral turpitude. Ms. Brehe filed a motion challenging the legal authority of the Board to exercise disciplinary jurisdiction over her certificates; but the Board rejected her challenge. In view of the fact that the Department had no plan to present evidence showing moral turpitude, we believe the Board erred in denying the motion to dismiss. The charge to which Ms. Brehe pleaded guilty did not necessarily involve moral turpitude, and the Department never showed that the circumstances of the offense were such as to involve moral turpitude.

■ No doubt many instances of child endangerment do involve moral turpitude. The General Assembly evidently considered this, because it *mandated* discipline for the crime of *first degree* endangerment, regardless of the circumstances. The related circumstances, if shown, would be pertinent only to the degree or severity of the discipline, not to whether the Board had authority to impose discipline. But we remain unpersuaded that the Department is correct in this case that the mere fact that someone pleads guilty to *second degree* child endangerment means that such person *necessarily* committed a crime of moral turpitude, without regard to any related circumstances. Therefore, we conclude that the hearing officer and the Board misapplied the law in concluding that a conviction of second-degree child endangerment is *ipso facto* a conviction of a crime involving moral turpitude, creating authority for the Department to discipline a teaching certificate.

In view of our resolution of this issue, it is not necessary to address the remaining contentions of Ms. Brehe.

## Conclusion

For the foregoing reasons, we reverse the Board's discipline of Ms. Brehe's certificate. We remand for dismissal of the Department's complaint against Ms. Brehe.

EDWIN H. SMITH and HARDWICK, JJ., concur.