

# In the
# Missouri Court of Appeals
## Western District

JEANNIE OWENS,

       **Respondent,**

v.

**MISSOURI STATE BOARD OF NURSING,**

       **Appellant.**

**WD78486**

**OPINION FILED:**

**November 17, 2015**

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Patricia S. Joyce, Judge**

**Before Division Two:**
**Mark D. Pfeiffer, P.J., Lisa White Hardwick, and James Edward Welsh, JJ.**

When the Missouri State Board of Nursing revoked Jeannie Owens's nursing license

pursuant to section 335.066.16(1)(a), RSMo Cum. Supp. 2013, because Owens had pled guilty to

driving while intoxicated, Owens filed a petition for judicial review of the Board's decision with

the Circuit Court of Cole County. The circuit court reversed the Board's revocation order

concluding that driving while intoxicated was not a crime of "moral turpitude" or a crime related

to Owens's ability to practice as a nurse. The Board thereafter filed this appeal with this court.

In an appeal from a judgment of a circuit court addressing the decision of an administrative

agency, this court reviews the decision of the administrative agency and not the judgment of the

circuit court. *Bird v. Mo. Bd. of Architects*, 259 S.W.3d 516, 520 n.7 (Mo. banc 2008). Pursuant

to Rule 84.05(e), when the circuit court reverses the decision of an administrative agency, the party aggrieved by the agency's decision files the appellant's brief. Therefore, although the Board filed this appeal as the party aggrieved by the circuit court's decision, Owens filed the appellant's brief, and the Board filed the respondent's brief.

In this appeal, Owens contends that the Board erred in revoking her nursing license because (1) her guilty plea to driving while intoxicated is not a crime of moral turpitude or a crime reasonably related to her ability to practice as a nurse, (2) the Board has no lawful basis to impose discipline on her license for failing to report the guilty plea to the Board, and (3) the revocation of her license constitutes a punitive sanction on her license and is not necessary to protect the public. We affirm the circuit court's judgment reversing the Board's order to revoke Owens's nursing license.

Owens holds a license from the Missouri State Board of Nursing as a registered nurse. On January 4, 2011, Owens pled guilty in the Circuit Court of Cole County to the class B misdemeanor of driving while intoxicated—drug intoxication under section 577.010, RSMo.[1] The court sentenced Owens to 60 days in jail but suspended execution of the sentence and placed Owens on probation for two years.

On October 8, 2013, the Board's legal counsel filed a complaint entitled "Request for Disciplinary Hearing," asking the Board to hold a hearing pursuant to section 335.066.16(1) to determine whether cause existed to discipline Owens's nursing license. The Board's complaint alleged that Owens's license should be disciplined under section 335.066.2(2), because of the driving while intoxicated offense. The Board alleged that Owens's DWI was an offense

---

[1]The guilty plea judgment was not included in the record on appeal, but the parties agree that Owens pled guilty, on January 4, 2011, to the class B misdemeanor of driving while intoxicated—drug intoxication.

2

involving moral turpitude and an offense reasonably related to the qualifications, functions, or duties of a nurse. The complaint also alleged that Owens "failed to report her plea of guilty on her 2011 and 2013 applications to renew her registered professional nursing license."

On December 5, 2013, the Board held a hearing regarding the allegations in the complaint. Owens appeared at the hearing *pro se*. Owens did not make any objections to the Board's evidence, which included court records related to her DWI, including the probable cause statement and copies of the license renewal applications she submitted to the Board in 2011 and 2013.

The probable cause statement filed in the DWI case stated that, on May 14, 2009, the reporting officer responded to the scene of an accident at 8200 No More Victims Road in Jefferson City, Missouri. Upon arrival at the scene, the officer found Owens's vehicle parked "on top of" another vehicle. The officer observed that Owens's clothing was on inside out and backwards and also noted that Owens appeared confused and unable to understand what the officer was asking her. According to the probable cause statement, Owens told the officer that she did not remember if she had taken any medication that day. The officer, however, located a bottle of prescription medication in plain view on the passenger side of the vehicle. The bottle contained a carisoprodol (a generic version of Soma), a muscle relaxer, which was prescribed to Owens. The probable cause statement noted that the prescription had been filled the day prior to the accident for 90 pills, but the bottle contained only 37 pills at the time it was found by the officer.

Owens did not give any testimony on her own behalf, but she was examined by the Board's attorney. Owens testified that, on May 14, 2009, she was employed as a nurse at the Jefferson City Correctional Center. That morning, before driving to work, Owens admitted that

3

she took two carisoprodol tablets and an antibiotic. Owens said that she was taking carisoprodol for back pain and that she had previously taken two tablets at one time with no ill effects. She admitted that she was only supposed to take one pill every six hours but said that she took two pills because her back was "hurting really bad." She testified that,when she pulled her vehicle into her employer's parking lot, she started to feel dizzy. She said that, when she attempted to park, she backed into another car. Owens acknowledged that she had filled the prescription for 90 pills of carisoprodol just a day before the accident, but she said that some of the pills were at her home because she did not want to carry that many pills with her. She also said that, the day she had the prescription filled, she took one to two pills every hour.

When questioned by the Board's attorney about why she did not disclose her guilty plea on her renewal applications, Owens stated: "Honestly, I was scared . . . . [b]ecause of the Board of Nursing. I've never been in trouble before with the Board of Nursing and I was scared." Upon further questioning, Owens admitted that she previously had a license as a licensed practical nurse that was revoked by the Board because she stole $50.00 from a co-worker.

On January 9, 2014, the Board issued its Findings of Fact, Conclusions of Law and Disciplinary Order concluding it had grounds to revoke Owens's nursing license pursuant to section 335.066.16(1)(a). The Board found that Owens's testimony was "not credible and not persuasive" and found that Owens's DWI was an offense involving moral turpitude and an offense reasonably related to the qualifications, functions, or duties of a registered nurse. The Board concluded:

> The plea of guilty to driving while intoxicated-drug intoxication is cause for the Board to take disciplinary action against [Owens's] nursing license. A critical aspect of being a nurse is to be unimpaired and sober at all times. A nurse is, because of her position and training, in a crucial position to know what the effects of powerful medications such as Soma can be on the human body. A nurse

4

in an impaired condition is a danger to herself and her patients. The Board finds over-medicating oneself to be a very troubling and worrisome activity for a nurse to be involved in. [Owens] admitted at the hearing that she was supposed to take the Soma only once every six hours, but she admitted she took two of them at the same time right before she drove to work at the prison where she was a nurse. The Board finds [Owens's] actions very troubling.

The Board also stated in its findings of fact that Owens failed to report her guilty plea on her license renewal applications for 2011 and 2013. The Board, however, did not find that Owens's failure to disclose her guilty plea was an independent basis for discipline. The Board merely noted that it did not find Owens's explanation to be "mitigating or an excuse in that nurses are expected to follow the rules set for them and be advocates for their patients." The Board further stated, "A nurse must be accountable and stand up for her actions at all times, and be willing to accept the consequences of her actions." The Board concluded that the appropriate level of discipline for Owens was revocation of her nursing license "in order to safeguard the health of the public."

On January 17, 2014, Owens filed a petition for judicial review of the Board's decision in the Circuit Court of Cole County. On March 6, 2015, the circuit court issued its Findings of Fact, Conclusion of Law and Judgment reversing the Board's decision to revoke Owens's nursing license. This appeal followed.

In an appeal from the circuit court's review of an administrative agency's decision, this court reviews the agency's decision, not the decision of the circuit court. *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009). "Article V, section 18 of the Missouri Constitution articulates the standard of judicial review of administrative actions." *Id*. On appeal, we must determine "whether the agency actions 'are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and

5

substantial evidence upon the whole record.'" *Id*. (quoting Mo. Const. art. V, § 18). We, therefore, must determine whether the decision is supported by sufficient competent and substantial evidence, after considering the whole record. *Id*. We will affirm the agency's decision unless it:

> (1) Is in violation of constitutional provisions;
>
> (2) Is in excess of the statutory authority or jurisdiction of the agency;
>
> (3) Is unsupported by competent and substantial evidence upon the whole record;
>
> (4) Is, for any other reason, unauthorized by law;
>
> (5) Is made upon unlawful procedure or without a fair trial;
>
> (6) Is arbitrary, capricious or unreasonable;
>
> (7) Involves an abuse of discretion.

§ 536.140.2, RSMo Cum. Supp. 2013. We will not substitute our judgment for that of the administrative agency on factual matters, but we review any questions of law concerning an agency's decision de novo. *Moheet v. State Bd. of Registration for Healing Arts*, 154 S.W.3d 393, 398 (Mo.App.2004).

A determination of whether a cause exists to discipline a nursing license under section 335.066.2 is generally made by the Administrative Hearing Commission. §335.066.3. In those circumstances, the Board holds a hearing only to determine what level of discipline, if any, to impose on the licensee. §335.066.4. However, in August 2013, the Missouri General Assembly added a provision to section 335.066 allowing the Board to make its own determinations regarding cause for discipline in certain circumstances. § 335.066.16. One such circumstance is where the Board possesses certified court records for an offense involving the qualifications,

6

functions, or duties of a nurse or for an offense involving moral turpitude. §335.066.16(1)(a).

Section 335.066.16 provides in pertinent part:

> (1) The board may initiate a hearing before the board for discipline of any licensee's license or certificate upon receipt of one of the following:
>
> (a) Certified court records of a finding of guilt or plea of guilty or nolo contendere in a criminal prosecution under the laws of any state or of the United States for any offense involving the qualifications, functions, or duties of any profession licensed or regulated under this chapter, for any offense involving fraud, dishonesty, or an act of violence, or for any offense involving moral turpitude, whether or not sentence is imposed[.]
>
> . . .
>
> (3) Upon a finding that cause exists to discipline a licensee's license, the board may impose any discipline otherwise available.

The Board determined that Owens's DWI was an offense involving moral turpitude and involving the qualifications, functions, and duties of a nurse. Therefore, the Board utilized the procedural mechanism of section 335.066.16 to hold a hearing and determine that there was cause to discipline Owens's nursing license. However, the statutory basis for the discipline that the Board imposed on Owens's nursing license was section 335.066.2(2). Section 335.066.2(2) provides:

> 2. The board may cause a complaint to be filed with the administrative hearing commission as provided by chapter 621 against any holder of any certificate of registration or authority, permit or license required by sections 335.011 to 335.096 or any person who has failed to renew or has surrendered his or her certificate of registration or authority, permit or license for any one or any combination of the following causes:
>
> . . . .
>
> (2) The person has been finally adjudicated and found guilty, or entered a plea of guilty or nolo contendere, in a criminal prosecution pursuant to the laws of any state or of the United States, for any offense reasonably related to the qualifications, functions or duties of any profession licensed or regulated pursuant to sections 335.011 to 335.096, for any offense an essential element of which is

7

fraud, dishonesty or an act of violence, or for any offense involving moral
turpitude, whether or not sentence is imposed[.]

In her first point on appeal, Owens assert that the Board's revocation of her nursing license was contrary to law, unauthorized by law, unsupported by competent and substantial evidence upon the whole record, and in violation of her right to due process under the law. In particular, she asserts that her guilty plea to driving while intoxicated for drug intoxication is not a crime of moral turpitude or a crime reasonably related to her ability to practice as a nurseas required by section 335.066.16(1)(a). We agree.

"Moral turpitude" is defined as "'an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellowman or to society in general, contrary to the accepted and customary rule of right and duty between man and man; everything "done contrary to justice, honesty, modesty, and good morals."'" *In re Frick*, 694 S.W.2d 473, 479 (Mo. banc 1985) (quoting *In re Wallace*, 19 S.W.2d 625 (Mo. banc 1929)). "With regard to the matter of 'moral turpitude,' it has been said that there are three classifications of crimes." *Brehe v. Mo. Dept. of Elementary & Secondary Educ.*, 213 S.W.3d 720, 725 (Mo. App. 2007) (citing AM.JUR.2D Criminal Law § 22 (1998)). According to the *Brehe* court, those classifications are:

> (1) crimes that necessarily involve moral turpitude, such as frauds; (2) crimes "so obviously petty that conviction carries no suggestion of moral turpitude," such as illegal parking; and (3) crimes that "may be saturated with moral turpitude," yet do not involve it necessarily, such as willful failure to pay income tax or refusal to answer questions before a congressional committee.

*Id*. (quoting *Twentieth Century-Fox Film Corp. v. Lardner*, 216 F.2d 844, 852 (9th Cir.1954)). Under the first category, commission of the crime itself establishes that it necessary involved moral turpitude. *Id*. If the offense, however, falls in the third category, an inquiry must be made

8

into the circumstances surrounding the offense to show moral turpitude. *Id*. The Board, therefore, could discipline a nurse's license for either a category one or category three offense.

Regardless of whether we look at the offense of driving while intoxicated under category one or category three, we find nothing the crime of driving while intoxicated in this case that suggests that Owens committed an act of "baseness, vileness, or depravity." The Board argues that driving while intoxicated is irresponsible, and we agree. But, it most certainly does not rise to the level of baseness, vileness, or depravity under these circumstances.

Although no Missouri court has addressed whether driving while intoxicated is an offense involving moral turpitude, several other states have considered this issue. These states have primarily dealt with the issue in regard to statutes or rules which authorize a witness to be impeached by introducing evidence showing that the witness was convicted of a crime involving moral turpitude. In *Diamond v. State*, 268 So.2d 850, 853 (1972), the Alabama Court of Criminal Appeals held that driving while intoxicated is not "the kind of offense which signifies an inherent quality of baseness, vileness, and depravity, denoting moral turpitude." In *State v. Bushey*, 457 A.2d 279, 281 (1983), the Vermont Supreme Court declared that "drunken driving convictions are not convictions of crimes involving moral turpitude, [and] their admissibility for impeachment purposes is clearly prohibited." In *Fee v. State*, 497 S.W.2d 748, 750 (1973),the Tennessee Court of Criminal Appeals held that the trial court erred in allowing the State to cross-examine a defendant about his convictions for driving while intoxicated because the convictions did not involve moral turpitude.

Some states, however, look at the circumstances surrounding the crime in determining whether the offense of driving while intoxicated involved moral turpitude for impeachment purposes. In those states, the courts look at whether the offense was the first offense for the

9

driver or whether it was charged as a felony or misdemeanor. In *People v. Forster*, 29 Cal. App. 4th 1746, 1756 (1994), the California Court of Appeals held that felony driving under the influence with three or more driving under the influence convictions within seven years is a crime involving moral turpitude. The court concluded that the crime at issue was "a recidivist type crime involving an extremely dangerous activity" and that a repeat offender was "presumptively aware of the life-threatening nature of the activity and the grave risks involved." *Id*. at 1757. The court further explained:

> Continuing such activity despite the knowledge of such risks is indicative of a "conscious indifference or 'I don't care attitude' concerning the ultimate consequences" of the activity from which one can certainly infer a "'depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.'"

*Id*. (citations omitted). In *State v. Hall*, 411 S.E.2d 441, 442 (1991), the South Carolina Court of Appeals held that driving while under the influence, at least with regard to a first offense, is not a crime of moral turpitude. The *Hall* court reasoned:

> In our view, first offense driving under the influence, although not to be condoned, cannot be necessarily characterized as "an act of baseness, vileness or depravity in the private and social duties which man owes to his fellow man or to society in general, contrary to the customary and accepted rule of right and duty between man and man."

*Id*. (citation omitted). In *Lopez v. State*, 990 S.W.2d 770, 778 (1999), the Texas Court of Appeals held that a misdemeanor driving while intoxicated conviction is not an offense involving moral turpitude.

Moreover, in a case involving the discipline of an attorney's license, the Indiana Supreme Court lookedatthe circumstances surrounding the crime in determining whether the offense of driving while intoxicated involved moral turpitude. In the case of *In the Matter of Oliver*, 493

10

N.E.2d 1237, 1240-41 (1986), the Indiana Supreme Court decided that an attorney's DWI conviction was not an offense involving moral turpitude because the attorney was not a "multiple offender or someone with a chronic alcohol problem," was charged with a misdemeanor, and did not cause any personal injury or property damage.

We find persuasive these cases holding that driving while intoxicated is not a crime involving moral turpitude, especially when dealing with a first offense and a conviction as a misdemeanor. In this case, it appears from the record that this is Owens's first DWI, and it was a misdemeanor conviction. We find nothing within the crime of driving while intoxicated in this case that suggests that Owens committed an act of "baseness, vileness, or depravity." The Board, therefore, was without authority to revoke Owens's nursing license under section 335.066.16, given that Owens's guilty pleato driving while intoxicated was not a crime involving moral turpitude.

The Board also revoked Owens's nursing license because it found that her offense of while intoxicated involved "the qualifications, functions, or duties" of a nurse. § 335.066(16)(1)(a). The offense of driving while intoxicated does not "involve" the qualifications, functions, or duties of a nurse. Webster's Third New International Dictionary defines "involve" as "to relate closely: CONNECT, LINK[.]" Webster's Third New International Dictionary 1191 (1993). The Board argues that, because Owens abused prescription medications and because she took these medications on her way to work, it establishes that her actions were related to her functions and duties of a nurse. A nurse's actions before or after the offense is committed, however, are not the focus of section 335.066.16(1)(a). Section 335.066.16(1)(a) is concerned whether *the offense* itself involved the qualifications, functions, or duties of a nurse. Owens pled guilty to the class B misdemeanor of driving while intoxicated by operating a motor

11

vehicle while under the influence of carisoprodol. Nothing within the offense of driving while intoxicated relates to or is connected or linked to the qualifications, functions, or duties of a nurse. The Board, therefore, was without authority to revoke Owens's nursing license under section 335.066.16, given that Owens's guilty plea to driving while intoxicated was not a crime involving the qualifications, functions, or duties of a nurse.

In finding that Owens's guilty plea to driving while intoxicated is not an offense involving moral turpitude or an offense involving the qualifications, functions, or duties of a nurse, we do not mean to suggest that the circumstances relating to a driving while intoxicated offense can never be grounds to revoke a nurse's license. Indeed, other provisions of section 355.066.2 may be implicated by Owens's conduct and provide a basis for the Board to file a complaint with the administrative hearing commission seeking a determination that cause exists to discipline her nursing license. We merely hold that the Board cannot bypass the administrative hearing commission in this case and use section 335.066.16 to declare that Owens's class B misdemeanor of driving while intoxicated is an offense involving moral turpitude or an offense involving the qualifications, functions, or duties of a nurse.

In her second point on appeal, Owens asserts that the Board erred in revoking her nursing license because the Board has no lawful basis under section 335.066.16 to impose discipline on her nursing license for failing to report her guilty plea for driving while intoxicated to the Board. In its Finding of Fact, the Board did make findings that Owens failed to report her guilty plea on her 2011 and 2013 applications to renew her nursing license. Moreover, in its Conclusions of Law, the Board further noted that Owens said that she did not report the guilty plea on her 2011 and 2013 renewal applications because "she was scared." The Board stated that it did not find her being scared to be "mitigating or an excuse in that nurses are expected to follow the rules set

12

out for them and be advocates for their patients." The Board concluded, "A nurse must be accountable and stand up for her actions at all times, and be willing to accept the consequences of her actions." The Board did not find that cause existed to discipline Owens's nursing license because of her failure to report her DWI offense to the Board. Indeed, in its brief on appeal, the Board acknowledged that it "did not determine that there was cause to discipline Owens's license because of her failure to report her DWI offense to the Board." The Board found cause to discipline Owens's nursing license pursuant to §§ 335.66.16(1)and 335.066.2(2) because the offense of driving while intoxicated involved the qualifications, functions, and duties of a nurse and was an offense involving moral turpitude. Owens's contention is, therefore, without merit.

## Conclusion

The Board erred in revoking Owens's nursing license because her guilty plea to driving while intoxicated is not a crime of moral turpitude or a crime reasonably related to her ability to practice as a nurse.[2] We, therefore, affirm the circuit court's judgment reversing the Board's order to revoke Owens's nursing license.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

---

[2]Because we conclude that the Board erred in revoking Owens's nursing license, we need not address Owens's third point on appeal concerning whether or not the Board's revocation of her license constituted a punitive sanction on her license and was necessary to protect the public.