

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| **MARK WAGNER,** | ) |
| | ) |
| **Appellant,** | ) |
| | ) |
| **v.** | ) **WD81992** |
| | ) |
| | ) **OPINION FILED:** |
| | ) **March 5, 2019** |
| **MISSOURI STATE BOARD OF** | ) |
| **NURSING,** | ) |
| | ) |
| **Respondent.** | ) |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Anthony Rex Gabbert, Judges

Mr. Mark Wagner ("Wagner") appeals from the judgment of the Circuit Court of Cole

County, Missouri ("circuit court"), affirming the decision of the Missouri State Board of Nursing

("Board"), which found cause to discipline and imposed discipline against Wagner's nursing

license, which discipline consisted of suspension for six months, followed by probation for three

years, subject to terms and conditions. We affirm the circuit court's judgment.[1]

---

[1] In an appeal from the circuit court's judgment following judicial review of an administrative agency's decision, this court reviews the decision of the administrative agency and not the judgment of the circuit court. *Curtis v. Mo. Bd. for Architects, Prof'l Eng'rs, Prof'l Land Surveyors & Prof'l Landscape Architects*, 534 S.W.3d

**Factual and Procedural Background**

Wagner had been licensed by the Board since 1996 as a registered professional nurse, license number RN 145493. He also held a nursing license in the State of Kansas. He had been employed at Olathe Medical Center for ten years. One of his coworkers on January 21, 2014, was a nineteen-year-old female nurse aide, F.D.C. On that date, Wagner was forty-eight years old. F.D.C. would assist Wagner in caring for some of his patients. In addition to Wagner's professional relationship with F.D.C., Wagner admitted that he would "flirt" with her at work. He did not have a personal relationship with her outside of work. Wagner justified his flirting as his way of trying to make F.D.C. "feel more comfortable" because he felt she was not fitting in too well in her role as part of the team at Olathe Medical Center.

On the night of January 21, 2014, one of Wagner's patients, an elderly gentleman, had been repeatedly getting out of bed and complaining of pain and nausea. About 11:00 p.m., the patient jumped out of bed, setting off his bed alarm. Wagner ran into the patient's room. After Wagner took the patient to the bathroom and then took him back to bed, Wagner returned to the nurses' station. When F.D.C. finished taking patients' vital signs, she came to the nurses' station. Wagner informed her that she needed to take orthostatic vitals on the patient Wagner had just taken to the bathroom. Wagner told F.D.C. that the patient should be awake. Wagner accompanied F.D.C. to assist her. Upon arrival into the patient's room, to Wagner's "amazement," the patient was asleep. Wagner then proceeded to offensively touch F.D.C. on her buttocks, without invitation or permission, while telling her they should leave the patient alone and get his orthostatic vitals later.

---

264, 267 (Mo. App. W.D. 2017). However, in our mandate, we reverse, affirm, or otherwise act upon the circuit court's judgment. *Id.* at 267 n.3. *See* Rule 84.14.

As a direct result of Wagner's misconduct related to the offensive touching of F.D.C., Wagner was charged in the District Court of Johnson County, Kansas, by amended complaint with misdemeanor battery in violation of K.S.A. 21-5413 and K.S.A. 21-6602(a)(2) for unlawfully and knowingly causing physical contact with F.D.C., "done in a rude, insulting or angry manner." On January 30, 2015, Wagner pleaded guilty as charged. The court sentenced Wagner to an underlying jail term of six months, suspended execution of the sentence, and placed him on probation for a term of twelve months. The sentencing court also imposed several *special conditions* on Wagner's probation, including following the recommendations of a *sex offender evaluation, registering pursuant to K.S.A. 22-4906(i), and having no contact with F.D.C.* Additionally, Wagner's probation officer *did not allow Wagner to work as a nurse while on probation*.

The Board's Division of Professional Registration filed a Request for Disciplinary Hearing with the Board, alleging that Wagner's plea of guilty to misdemeanor battery in the District Court of Johnson County, Kansas, constituted cause to discipline his nursing license pursuant to section 335.066.2(2). The Board conducted a disciplinary hearing at which Wagner testified. Among the documents the Board received into evidence were certified copies of the records from Wagner's case in the District Court of Johnson County, Kansas, including the initial complaint as well as the amended complaint, to which Wagner pleaded guilty, and the judgment. The certified court records cited K.S.A. 21-5413 and K.S.A. 21-6602(a)(2).[2] The

---

[2] K.S.A. section 21-5413(a)(2) provides: "Battery is: . . . knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. section 21-6602 classifies misdemeanors and terms of confinement and provides at section 21-6602(a)(2) that a sentence for a class B misdemeanor "shall be a definite term of confinement in the county jail which shall be fixed by the court and shall not exceed six months."

language in the amended complaint[3] tracked the language of K.S.A. 21-5413 and classified the misdemeanor as a class B misdemeanor pursuant to section 21-6602(a)(2).

The Board issued its Findings of Fact, Conclusions of Law, and Disciplinary Order ("disciplinary order"). The Board cited K.S.A. 21-5413 and K.S.A. 21-6602(a)(2) in its Findings of Fact and quoted both statutes in its Conclusions of Law. The Board determined that there was cause to discipline Wagner's nursing license for his sexual advances toward a nineteen-year-old nurse aide coworker by offensively touching her on her buttocks, without invitation or permission, in a patient's room while the patient was asleep. The Board determined that Wagner was subject to discipline because the definition of the battery offense Wagner pled guilty to, as relevant to this appeal, involved moral turpitude. The Board suspended Wagner's nursing license for six months, followed by three years' probation, subject to terms and conditions.

Wagner petitioned for judicial review of the Board's disciplinary order. The circuit court entered judgment, affirming the Board's decision.

Wagner timely appeals.

### Standard of Review

"'Article V, section 18 of the Missouri Constitution articulates the standard of judicial review of administrative actions.'" *Owens v. Mo. State Bd. of Nursing*, 474 S.W.3d 607, 611 (Mo. App. W.D. 2015) (quoting *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009)). On appeal, we must determine whether the actions of the agency "'are authorized by law, and in cases in which a hearing is required by law, whether the

---

[3] The amended complaint alleged:

COUNT I – That on or about the 21st day of January, 2014 in the City of Olathe, County of Johnson, State of Kansas MARK WILLIAM WAGNER did then and there unlawfully and knowingly cause physical contact with another person, to-wit: F.D.C., done in a rude, insulting or angry manner, a class B person misdemeanor, in violation of K.S.A. 21-5413 and K.S.A. 21-6602(a)(2). (battery)

4

same are supported by competent and substantial evidence upon the whole record.'" *Id*. (quoting

MO. CONST. art. V, § 18). We view the evidence objectively and not in the light most favorable

to the agency's decision. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc

2003).

> We will affirm the agency's decision unless it:
>
> (1) Is in violation of constitutional provisions;
>
> (2) Is in excess of the statutory authority or jurisdiction of the agency;
>
> (3) Is unsupported by competent and substantial evidence upon the whole record;
>
> (4) Is, for any other reason, unauthorized by law;
>
> (5) Is made upon unlawful procedure or without a fair trial;
>
> (6) Is arbitrary, capricious or unreasonable;
>
> (7) Involves an abuse of discretion.

§ 536.140.2.[4] "We will not substitute our judgment for that of the administrative agency on

factual matters, but we review any questions of law concerning an agency's decision de novo."

*Owens*, 474 S.W.3d at 611. "The Board's decision is presumed valid, and the burden is on the

party attacking it to overcome that presumption." *Curtis v. Mo. Bd. for Architects, Prof'l Eng'rs,*

*Prof'l Land Surveyors & Prof'l Landscape Architects*, 534 S.W.3d 264, 267 (Mo. App. W.D.

2017) (internal quotation marks omitted).

## Analysis

Wagner raises three points on appeal. In his first point, he asserts that the Board acted in

excess of its statutory authority in that misdemeanor battery does not meet the requirements of

section 335.066.16 that the offense must involve the qualifications, functions, or duties of a

---

[4] All statutory references are to the REVISED STATUTES OF MISSOURI 2000, as updated by the 2013 Cumulative Supplement.

licensed nurse; involve fraud, dishonesty, or an act of violence; or involve moral turpitude. In his second point, he contends that the Board's decision was unsupported by competent and substantial evidence upon the whole record because the record does not include a copy of the Kansas statute that Wagner is alleged to have violated. In his third point, he avers that the Board acted in excess of its statutory authority in requiring him, as a disciplinary sanction, to comply with notice, practice, and reporting requirements for out-of-state practice, because the Board had no authority over his conduct subject to licensure in a sister state.

## Point I

First, Wagner asserts that the Board acted in excess of its statutory authority when it found he was subject to discipline. He claims that the simple battery, to which he pleaded guilty in the District Court of Johnson County, Kansas, does not meet the requirements of section 335.066.16 that the offense must involve the qualifications, functions, or duties of a licensed nurse; involve fraud, dishonesty, or an act of violence; or involve moral turpitude. Wagner admits that his conduct was "boorish," "rude," and perhaps "insulting" but that it was not an act of moral turpitude.

"A determination of whether a cause exists to discipline a nursing license under section 335.066.2 is generally made by the Administrative Hearing Commission." *Owens*, 474 S.W.3d at 611 (citing § 335.066.3). "In those circumstances, the Board holds a hearing only to determine what level of discipline, if any, to impose on the licensee." *Id.* (citing § 335.066.4). "However, in August 2013, the Missouri General Assembly added a provision to section 335.066 allowing the Board to make its own determinations regarding cause for discipline in certain circumstances." *Id.* (citing § 335.066.16). "One such circumstance is where the Board possesses

6

certified court records for an offense involving . . . moral turpitude." *Id*. (citing § 335.066.16(1)(a)). Section 335.066.16 provides in pertinent part:

> (1) The board may initiate a hearing before the board for discipline of any licensee's license . . . upon receipt of one of the following:
>
>> (a) Certified court records of a finding of guilt or plea of guilty or nolo contendere in a criminal prosecution under the laws of any state or of the United States for any offense involving the qualifications, functions, or duties of any profession licensed or regulated under this chapter, for any offense involving fraud, dishonesty, or an act of violence, or for any offense *involving moral turpitude*, whether or not sentence is imposed;
>
> . . . .
>
> (3) Upon a finding that cause exists to discipline a licensee's license, the board may impose any discipline otherwise available.

(Emphasis added.)

The Board used the procedural mechanism of section 335.066.16 to hold a hearing and determine that there was cause to discipline Wagner's nursing license. The offenses constituting cause to discipline a nursing license are stated in the disjunctive. Thus, although the Board determined that Wagner's offense was not one reasonably related to the functions or duties of a nurse, the Board concluded that cause existed to discipline Wagner's nursing license because, in pertinent part, the battery charge Wagner pleaded guilty to (and for which he was subject to court-imposed conditions on his probation that included *sex offender* evaluation, treatment, and registration) was an offense involving moral turpitude.[5]

"Moral turpitude" is defined as "'an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellowman or to society in general, contrary to the accepted and customary rule of right and duty between man and man; everything done contrary to justice, honesty, modesty, and good morals." *Owens*, 474 S.W.3d at 612 (quoting *In re Frick*,

---

[5] Though the Board also listed other grounds in support of its finding that cause existed to discipline Wagner's nursing license, given our conclusion as to the Board's findings relating to Wagner's moral turpitude, we need not and do not discuss the other bases upon which the Board supported its disciplinary action.

694 S.W.2d 473, 479 (Mo. banc 1985)).  "With regard to the matter of 'moral turpitude,' it has been said that there are three classifications of crimes."  *Brehe v. Mo. Dep't of Elementary & Secondary Educ.*, 213 S.W.3d 720, 725 (Mo. App. W.D. 2007) (internal quotation marks omitted).  According to the *Brehe* court, crimes involving moral turpitude have been classified as:

> (1) crimes that necessarily involve moral turpitude, such as frauds; (2) crimes "so obviously petty that conviction carries no suggestion of moral turpitude," such as illegal parking; and (3) crimes that "may be saturated with moral turpitude," yet do not involve it necessarily, such as willful failure to pay income tax or refusal to answer questions before a congressional committee.

*Id*. (quoting *Twentieth Century-Fox Film Corp. v. Lardner*, 216 F.2d 844, 852 (9th Cir.1954)).[6] "Under the first category, commission of the crime itself establishes that it necessar[il]y involved moral turpitude."  *Owens*, 474 S.W.3d at 612.  "If the offense, however, falls in the third category, an inquiry must be made into the circumstances surrounding the offense to show moral turpitude." *Id*.  Accordingly, the Board could discipline a nurse's license for either a category 1 or category 3 offense.  The Board found that battery was both a category 1 and a category 3 crime.

The Board's finding that battery was a category 3 crime was based on the fact that Wagner, who was *forty-eight years old* at the time, made a sexual advance toward a young woman under his supervisory authority by offensively touching a *nineteen-year-old* nurse aide coworker on her buttocks, without invitation or permission, in a patient's room while the patient was asleep and that "[h]is actions involve[d] depravity and were contrary to good morals."  Of corresponding relevance, in addition to sentencing Wagner to an underlying jail term of six

---

[6] The *Brehe* court clarified that for category 1 crimes necessarily involving moral turpitude, including first-degree murder and rape, it is necessary only for the agency to show that there was a conviction or a guilty plea, whether or not sentence was imposed. *Brehe v. Mo. Dep't of Elementary & Secondary Educ.*, 213 S.W.3d 720, 725 (Mo. App. W.D. 2007).

months, suspending execution of the sentence, and placing him on probation for a term of twelve months, the District Court of Johnson County, Kansas, ordered that Wagner undergo sexual abuse counseling ("[s]ex offender evaluation follow recommendations"), "register pursuant to K.S.A. 22-4906(i),"[7] and have "[n]o contact with F.D.C." Clearly, the district court found the circumstances surrounding the offense to which Wagner pleaded guilty were indicative of a pattern of sexual abuse exhibited by Wagner and were not, as Wagner described it, circumstances merely indicative of isolated poor judgment.

In a case involving the discipline of an attorney's license,[8] the Missouri Supreme Court looked at the circumstances surrounding the attorney's conduct in determining whether his improper sexual advances toward his client were violative of the disciplinary rule prohibiting an attorney from "engag[ing] in illegal conduct involving moral turpitude." *In re Littleton*, 719 S.W.2d 772, 775 (Mo. banc 1986). In *Littleton*, the attorney made sexual advances toward his client by brushing his hands across her breasts while in his car. *Id*. at 774. The Court concluded that the conduct exhibited by the attorney was "contrary to justice, honesty, modesty and good morals" and violated the disciplinary rule, citing a case in which the Supreme Court of Indiana determined that an attorney who grabbed his female client, kissed her, and raised her blouse was guilty of illegal conduct involving moral turpitude. *Id*. at 776 (citing *In the Matter of Adams*, 428 N.E.2d 786 (Ind. 1981)).

---

[7] K.S.A. 22-4906(i) of the Kansas Offender Registration Act provides:

Notwithstanding any other provision of law, if a diversionary agreement or probation order, either adult or juvenile, or a juvenile offender sentencing order, requires registration under the Kansas offender registration act for an offense that would not otherwise require registration as provided in K.S.A 22-4902(a)(5), and amendments thereto, then all provisions of the Kansas offender registration act shall apply, except that the duration of registration shall be controlled by such diversionary agreement, probation order or juvenile offender sentencing order.

[8] Many of the cases in Missouri that discuss crimes involving moral turpitude are appeals of attorney discipline proceedings where the Missouri Supreme Court held that an attorney's conduct brought the lawyer's judgment into question and undermined public confidence in the Bar. *See cases cited in Brehe*, 213 S.W.3d at 726.

9

Here, Wagner and F.D.C. were in a professional relationship. Wagner was a forty-eight-year-old licensed nurse. F.D.C. was a nineteen-year-old nurse aide. F.D.C. had a right to expect that Wagner would conduct himself in a professional manner. However, Wagner chose to exploit that professional relationship when he made uninvited sexual advances by unlawfully and knowingly causing physical contact with F.D.C. by slapping her on the buttocks in an offensive, insulting, and sexual manner. We find persuasive the cases holding that improper sexual advances with corresponding uninvited physical contact to another person is conduct involving moral turpitude. The Board, therefore, had the authority to discipline Wagner's nursing license under section 335.066.16, given that Wagner's guilty plea to battery was a crime involving moral turpitude.

Point I is denied.

**Point II**

Second, Wagner contends that the Board's decision was unsupported by competent and substantial evidence upon the whole record because the record does not include a copy of the Kansas statute under which Wagner pleaded guilty to battery.

Section 536.070(6) expressly permits administrative agencies to "take official notice of all matters of which the courts take judicial notice." Under section 490.080 of The Uniform Judicial Notice of Foreign Law Act: "Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States." "[A] court takes judicial notice of a foreign statute where the pleading informs 'that the law of another state is relied upon *or contains allegations which show that the law of another state must be applied.*'" *Nelson v. Hall*, 684 S.W.2d 350, 357-58 (Mo. App. W.D. 1984) (quoting Rule 55.21(b)). *See also Robinson v. Gaines*, 331 S.W.2d 653, 655 (Mo. 1960) (taking judicial

notice of law in another state where pleading relied on law of another state or contained allegations showing that law of another state must be applied). "A litigant may also induce the judicial notice of a foreign statute by any other means which imparts to the adversary reasonable notice of that purpose." *Nelson*, 684 S.W.2d at 358 (citing § 490.110). "[W]here a cause of action exists by virtue of a foreign statute . . . , the existence of the statute . . . may be shown to the court by a pleading, or by other reasonable notice that the litigant relies upon the law of that other state or that such law necessarily appertains to decide the cause of action." *Id.*

Here, the Request for Disciplinary Hearing alleged that Wagner's plea of guilty to the class B misdemeanor of battery in violation of K.S.A. 21-5413 and K.S.A. 21-6602 in the District Court of Johnson County, Kansas, constituted cause to discipline his nursing license pursuant to section 335.066.2(2). Attached to the Request and incorporated by reference were certified copies of the complaint, the amended complaint (to which Wagner pleaded guilty), and the judgment from Wagner's case in the District Court of Johnson County, Kansas. The certified court records, which cited K.S.A. 21-5413 and K.S.A. 21-6602(a)(2), were among the documents offered and received into evidence by the Board at the disciplinary hearing. An administrative agency's records and documents are permitted to be treated as part of the record "by reference thereto when so offered." § 536.070(5). In its disciplinary order, the Board quoted the pertinent portions of the cited Kansas statutes and discussed the statutory language in its analysis.

The Request for Disciplinary Hearing was a pleading that informed the Board that Wagner pleaded guilty to the class B misdemeanor of battery in violation of the law of another state, specifically K.S.A. 21-5413 and K.S.A. 21-6602, which constituted cause for the Board to take disciplinary action against Wagner's nursing license. Attached to the Request were certified copies of the court records related to Wagner's guilty plea. The record indicates that Wagner

11

received the Request and the attachments thereto, which imparted to him reasonable notice that the Board was relying on his guilty plea to violation of the Kansas laws cited therein as the basis upon which to take disciplinary action against his nursing license.

The Board took official notice of the Kansas statutes. The Request and the attached certified copies of the complaint, the amended complaint (to which Wagner pleaded guilty), and the judgment, informed the Board and reasonably notified Wagner that his violation of Kansas law was relied upon to constitute cause to discipline his nursing license. Those documents were received into evidence at Wagner's disciplinary hearing. The Board's records and documents are permitted to be treated as part of the record "by reference thereto when so offered." § 536.070(5).

Point II is denied.

## Point III

In Wagner's third point, he avers that the Board acted in excess of its statutory authority in requiring him, as a disciplinary sanction, to comply with notice, practice, and reporting requirements for out-of-state practice, because the Board had no authority over his conduct subject to licensure in a sister state. Wagner argues that the "Employment Requirements" and "Employment Restrictions" contained in the Board's disciplinary order were intended by the Board "to apply wherever he practices the profession of nursing" because the requirements "are not limited, by their terms, to his practice in Missouri." He contends that the Board "has no jurisdiction to invade the territorial jurisdiction of the Kansas Board, which has not . . . disciplined him for the conduct underlying this case."[9]

---

[9] Of some relevance, however, is that the *Kansas* court decision, which imposed probation terms upon Wagner, ultimately resulted in his probation officer refusing to permit Wagner to be employed as a nurse during the entire twelve-month term of his probation.

12

Chapter 335 of the Nursing Practice Act governs the licensing of the nursing profession in Missouri. Section 335.066.16(1)(a) gives the Board the authority to initiate a hearing for discipline of a nurse's license upon receipt of certified court records of a plea of guilty in a criminal prosecution under the laws of any state for specified offenses. The Board received certified court records from the District Court of Johnson County, Kansas, that Wagner pleaded guilty to misdemeanor battery. "Upon finding that cause exists to discipline a [nurse's] license, the [B]oard may impose any discipline otherwise available." § 335.066.16(3).

The Board found that the appropriate level of discipline for Wagner's nursing license was suspension and probation in order to safeguard the public health. Wagner was also ordered to comply with certain terms and conditions during his suspension and probation. He was required to keep the Board informed of his current place of employment and any employment changes, to provide a copy of the disciplinary order to any current or potential employer, and to provide the Board with a quarterly job performance evaluation completed by his supervisor. He was restricted to only working as a nurse where there was on-site supervision by another nurse or physician, and to not working in home health care, hospice, or in a healthcare-related position for a temporary employment agency, or as a healthcare-related independent contractor. The terms and conditions imposed on Wagner's Missouri nursing license regarding job performance and supervision, whether his place of employment was physically located inside or outside of the State of Missouri, relate to the Board's oversight responsibility to protect the health of the Missouri public.

Wagner also holds a nursing license in the State of Kansas. If Wagner violated the restrictions imposed by the Board on his Missouri nursing license by working under his Kansas nursing license without on-site supervision, or working in home health care, or in a

13

healthcare-related position for a temporary employment agency, or as a healthcare-related independent contractor, the Board would have no authority to regulate his practice of nursing under his *Kansas* nursing license—only his *Missouri* nursing license. Wagner's *Kansas* nursing license is still subject to the authority of the *Kansas* State Board of Nursing. The Board's disciplinary order does not invade the territorial authority of the Kansas State Board of Nursing. In other words, the Board is *only* placing restrictions on Wagner if he wishes to retain his *Missouri* nursing license. This, the Board is authorized to do.

Point III is denied.

**Conclusion**

The judgment of the circuit court is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and Anthony Rex Gabbert, Judges, concur.